**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert E. MITCHELL,**
**Defendant-Appellant.**

**No. 80–9015**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 4, 1982.

Warren Herlong, Mobile, Ala., for defendant-appellant.

William R. Favre, Jr., Ginny S. Granade, Mobile, Ala., for plaintiff-appellee.

Before HILL, VANCE and HATCHETT, Circuit Judges.

VANCE, Circuit Judge:

Appellant Robert E. Mitchell was charged in a four-count indictment with violating 18 U.S.C. § 658[1] by intentionally disposing of property mortgaged to the Farmers' Home Administration (FmHA). At the close of the government's case the district court granted Mitchell's motion for judgment of acquittal as to counts three and four. Mitchell was convicted, however, on counts one and two. He was given two concurrent three year sentences, all but six months of which was suspended, and was placed on probation for three years. On appeal, Mitchell asserts that: (1) there was insufficient evidence that the transaction underlying count one was covered by the security agreement or that Mitchell intended to defraud the FmHA; (2) there was insufficient evidence that the soybeans pertinent to count two were subject to the FmHA lien; and (3) the admission into evidence of Ronnie Golden's testimony constituted reversible error. After considering each claim, we affirm the conviction.

In July 1976 Mitchell received FmHA loans. The first loan, in the amount of $212,500, was an emergency loss loan payable in five annual installments. The second loan, in the amount of $83,250, was an operating loan for the production of the current year's crops, and was payable January 1, 1977. Under the terms of these loans, the FmHA retained a lien on all crops or plant products growing or to be grown and all inventory, farm products, and supplies owned or thereafter acquired by Mitchell. Should Mitchell sell any crops or anything else covered by the security agreement, the money received was to be paid to the FmHA to reduce his debt. Mitchell also signed a supplementary agreement indicating that he understood that he would retain only that income from the 1976 crop that was in excess of the amount due that year on the two loans.

Count one involved Mitchell's November 1976 delivery of 3,575.5 bushels of soybeans to the Atmore Truckers Association (Association) in Atmore, Alabama. It was the practice of the Association to make an advance payment when grain was brought in for storage. After selling the grain and deducting the advance, storage charges, and interest, the Association would turn over

---

1. Section 658 of Title 18 of the United States Code provides:

> Whoever, with intent to defraud, knowingly conceals, removes, disposes of, or converts to his own use or to that of another, any property mortgaged or pledged to, or held by ... the Secretary of Agriculture acting through the Farmers' Home Administration ... shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the value of such property does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

the balance of the proceeds. In accordance with this practice, the Association issued a check for $15,000 payable to R. E. Mitchell. A week after this transaction the Association received a letter from Samuel Craig, an FmHA employee, advising it of the FmHA's lien on Mitchell's crops and requesting that all future checks be issued jointly to Mitchell and the FmHA. In June 1977, when Mitchell completed his transaction with the Association, the settlement check was made jointly payable to R. E. Mitchell and the FmHA. Mitchell did not apply to his loans the $15,000 advance that he had previously received, however, but used it instead to pay the 1977 rent for his farm land.

Count two involved a July 1977 purchase by Farmers Mutual Exchange (Farmers Mutual) in Summerdale, Alabama of 819.46 bushels of soybeans from Mitchell and its issuance to him of two checks totaling $4,761.07. On the back of each check was a statement that the person to whom the check was made payable certified that the grain described was free and clear of any liens or encumbrances, other than those listed. Mitchell listed no encumbrances or liens on either check.

In September 1976 Ronnie Golden, an employee of United Grain Company (United Grain) in Jay, Florida, stored corn for Mitchell and issued to him two partial advance checks totaling $8,000. In October 1976 Craig notified United Grain that any further payments made to Mitchell should be issued jointly with the FmHA because the FmHA held a lien on Mitchell's crop. Mitchell subsequently made a second delivery of corn to United Grain, but after being informed that payment would have to be made jointly, he said that he would take his corn elsewhere.

### Sufficiency of the Evidence

Mitchell asserts that there is insufficient evidence to uphold his conviction under either remaining count of the indictment. The standard of review as to the sufficiency of the evidence is whether a reasonably minded jury would necessarily have a reasonable doubt as to the defendant's guilt. *E.g., United States v. Cardona,* 650 F.2d 54, 57 (5th Cir. 1981); *United States v. Gonzalez,* 617 F.2d 104, 106 (5th Cir.), *cert. denied,* 449 U.S. 868, 101 S.Ct. 202, 66 L.Ed.2d 86 (1980). In applying this standard the court must view the evidence in the light most favorable to the government, *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and make all reasonable inferences and credibility choices that tend to support the jury's verdict. *See, e.g., United States v. Cardona,* 650 F.2d at 57; *United States v. Yanes,* 628 F.2d 294, 295 (5th Cir. 1980).

Mitchell first contends that he did not "dispose" of soybeans to the Association, as charged in count one of the indictment, because at the time he received the $15,000 advance no sale had taken place. Mitchell does not dispute that he applied the $15,000 to his land lease, but maintains that the government failed to prove that he had the necessary intent to defraud the FmHA. Mitchell asserts that the only evidence of his intent to defraud was Golden's testimony concerning a grain storage transaction not covered by the indictment, and that, since Golden's testimony was hesitant and unpersuasive and was contradicted by Mitchell, the jury must have had a reasonable doubt as to Mitchell's intent to defraud.

The record contains sufficient evidence to support the jury verdict on count one. The FmHA held a lien on all crops growing or to be grown by Mitchell, and Mitchell agreed in writing that all income from his 1976 crop was to be paid to the FmHA. The $15,000 advance constituted proceeds from crops[2] and Mitchell's intentional application of that sum to his land rental payment is not excused by the under-

---

2. See Uniform Commercial Code § 9–306(1), which provides:

(1) "Proceeds" includes whatever is received upon the sale, exchange, collection or

standable desire to maintain his farm as an ongoing operation.

■ Mitchell's second contention is that the government failed to demonstrate beyond a reasonable doubt that the soybeans that were the subject of count two had been mortgaged to the FmHA. He claims that the soybeans sold to Farmers Mutual consisted of seed beans not included in the FmHA farm reports or subject to the lien, and screenings[3] received in partial payment for cleaning soybeans belonging to other farmers. Even if Mitchell's testimony concerning the source of the soybeans sold to Farmers Mutual is accepted, the beans were still subject to the FmHA lien, which covered all farm products and supplies acquired by Mitchell.

### Extrinsic Evidence

■ Mitchell's final contention is that Golden's testimony concerning the events surrounding Mitchell's second effort to store grain with United Grain was so highly prejudicial as to constitute reversible error under Rule 404(b) of the Federal Rules of

Evidence.[4] The decision of the former fifth circuit in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), governs the propriety of the admission of such extrinsic offense evidence. *See Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). First, the evidence must be relevant to an issue other than the defendant's character. Second, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must be otherwise admissible under Rule 403.[5] *United States v. Beechum*, 582 F.2d at 911.

■ The first prong of *Beechum* can be satisfied if the evidence goes to the defendant's intent, the extrinsic offense requires the same intent as the charged offense, and the jury could find that the defendant committed the extrinsic offense.[6] *Id.* at 913. In this case, the evidence elicited from Golden concerned Mitchell's intent to defraud the FmHA, an issue that was clearly pertinent in this prosecution. Addi-

other disposition of collateral or proceeds.... Money, checks, deposit accounts and the like are "cash proceeds." All other proceeds are "noncash proceeds."

The rights and liabilities of the parties to a suit arising from a Farmers' Home Administration loan transaction are to be determined according to federal law. *United States v. Hext*, 444 F.2d 804, 808 (5th Cir. 1971). This federal common law is to be developed with general principles of commercial law in mind. *See United States v. Crittenden*, 563 F.2d 678, 681 (5th Cir. 1977), *vacated*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), *on remand*, 600 F.2d 478 (5th Cir. 1979). Accordingly, we adopt the 1972 U.C.C. definition of proceeds. We find it impossible to read "other disposition of collateral" to exclude a transfer for subsequent sale which results in an advance payment, as was the case here.

3. The "splits" or "screenings" were soybeans that remained after cleaning and were either too large, too small, or split.

4. Rule 404(b) of the Federal Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a

person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

5. Rule 403 of the Federal Rules of Evidence provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

6. That the defendant committed the extrinsic offense need not be proven beyond a reasonable doubt or by clear and convincing evidence. Under Rule 104(b) of the Federal Rules of Evidence such preliminary facts can be decided by the judge against the proponent only if a jury could not reasonably find the fact to exist. *United States v. Beechum*, 582 F.2d 898, 913 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

tionally, there was substantial evidence from which the jury could conclude that Mitchell committed the extrinsic offense.

██ Whether *Beechum's* second prong has been satisfied depends upon the circumstances of the extrinsic offense. Factors to be considered include the strength of the government's case on the issue of intent, the overall similarity of the extrinsic and charged offenses, the amount of time separating the extrinsic and charged offenses, and whether it appeared at the commencement of trial that the defendant would contest the issue of intent. *Id.* at 914–15; *see United States v. Guerrero*, 650 F.2d 728, 734 (5th Cir. 1981). The trial judge has wide discretion in evaluating these factors, and will not be reversed on appeal unless the defendant can demonstrate abuse of that discretion. *United States v. Johnson*, 585 F.2d 119, 125 (5th Cir. 1978); *Wright v. Hartford Accident & Indemnity Co.*, 580 F.2d 809, 810 (5th Cir. 1978): We think it clear that the trial judge did not abuse his discretion. The evidence indicates that Mitchell sold grain to Golden at United Grain under substantially similar conditions within three months of the transaction with the Association and within twelve months of the transaction with Farmers Mutual, and that he intended to convert the proceeds of that extrinsic transaction to his own use. Furthermore, it was evident from the outset of the trial that Mitchell's intent would be a disputed issue, a fact borne out by his contentions on appeal. *See United States v. Beechum*, 582 F.2d at 915; *United States v. Adderly*, 529 F.2d 1178, 1182 (5th Cir. 1976). Considering the posture of this case, the similarity of the charged and extrinsic transactions, and the fact that the extrinsic offense is not of a heinous nature likely to incite the jury to an irrational decision or otherwise run afoul of Rule 403, we find that the government evidence here complied with Rule 404(b).

AFFIRMED.