UNITED STATES of America, Plaintiff-Appellee,

v.

Don DIXON, Defendant-Appellant.

No. 82–5171
Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Feb. 18, 1983.

H. Jay Stevens, Asst. Fed. Public Defender, court-appointed, Orlando, Fla., for defendant-appellant.

Stephen D. Milbrath, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, FAY and CLARK, Circuit Judges:

GODBOLD, Chief Judge:

Don Dixon was convicted by a jury of two counts of willful tax evasion for the 1975 and 1976 tax years respectively, 26 U.S.C. Sec. 7201 (1980), and one related count of mail fraud, 18 U.S.C. Sec. 1341 (1980). On appeal Dixon argues that his conviction for understating his tax liability for the 1976 tax year cannot stand. He also argues that because prejudicial evidence was improperly admitted a mistrial must be granted. We reject both arguments and affirm Dixon's convictions.

Dixon's conviction for willfully evading tax liability for the 1976 tax year rests on the conclusion that he received substantial funds during 1976 from Beatrice Standley, an elderly client of Dixon's insurance business. He argues that, as a matter of law, he "received" the funds in 1975 when the funds were deposited in a bank account over which he had unfettered control. We disagree.

In *Rutkin v. U.S.,* 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952), the Supreme Court stated:

An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, *as a practical matter,* he derives readily realizable economic value from it.

343 U.S. at 137, 72 S.Ct. at 575 (emphasis added) *quoted in U.S. v. Rochelle,* 384 F.2d 748, 751 (5th Cir.1967). Although Dixon had formal legal control over the funds in 1975, *Rutkin* emphasizes that Dixon did not "receive" the funds for tax purposes until he obtained practical control of them.[1]

■ The evidence that Dixon did not obtain practical control of the funds until some time in 1976 was sufficient to create a jury question. Dixon promised Mrs. Standley that he was holding and investing the funds for her exclusive benefit. Yet the transfer of funds from Mrs. Standley's to Dixon's account in November of 1975 aroused the suspicions of bank officials and possibly Mrs. Standley. There is substantial evidence that Dixon did not feel free to use the funds for himself until 1976 after he had allayed Mrs. Standley's possible suspicions. A reasonable jury thus could have concluded beyond a reasonable doubt that Dixon did not have practical control over the funds until 1976. *See U.S. v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (Unit B) (en banc).

■ Dixon next argues that three types or pieces of prejudicial evidence were erroneously admitted at his trial, necessitating a mistrial. Dixon first complains that in proving that he had underrepresented his tax liability for tax years 1975 and 1976 the government elected to establish all items of Dixon's income and expenses. While this method of proof perhaps exposed Dixon to greater prejudice than other available methods, there is no requirement that the government choose the least prejudicial method of proving its case. *See* Fed.R. Evid. 403 (relevant evidence generally admissible unless prejudice substantially outweighs undue prejudice). We hold that the district court did not abuse its discretion in permitting the government to use the itemization method in establishing that Dixon understated his tax liability.

■ Dixon also contends that the district court improperly admitted the testimony of Edith Hanks concerning insurance dealings she had with a man named Don Dixon. Although Mrs. Hanks was unable to point out Dixon in the courtroom, she described him generally and identified a letter she had received from him. The district court was within its discretion in concluding that Mrs. Hanks' inability to identify Dixon in court went to the weight, not the admissibility, of her testimony.

■ Finally, Dixon maintains that the district court erred in admitting evidence

---

1. The district court's jury instructions adequately adhered to *Rutkin* 's realistic test.

Accordingly, if you should find ... that defendant, over all the facts and circumstances of the case, did not have *actual* intent and the *actual* ability to exercise control over these funds until 1976, then you may consider such funds to be taxable income to the defendant in calendar year 1976.

Jury Instructions at 37 (emphasis added).

relating to Dixon's understatement of his tax liability for tax year 1977, an offense not charged in the indictment. We hold that this evidence was properly considered on the issue of the willfulness of Dixon's failure to report fully his tax liability for 1975 and 1976.

In *U.S. v. Beechum,* 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), the former Fifth Circuit established a two part test for determining whether evidence of extrinsic offenses may be admitted under Rules 404(b), 401 and 403 of the Federal Rules of Evidence:

> First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403.

582 F.2d at 911 (footnote omitted). The evidence contested here satisfies the *Beechum* test of admissibility. First, the evidence is relevant to an issue other than Dixon's character—his intent to evade taxes for tax years 1975 and 1976. *See* 26 U.S.C. Sec. 7201 (1980) (emphasis added) ("Any person who *willfully* attempts in any manner to evade or defeat any tax....."); Fed.R.Evid. 404(b) (evidence of extrinsic offenses inadmissable except to show, *inter alia,* intent).

Second, the district court did not abuse its discretion in concluding that the prejudicial effect of the evidence did not substantially outweigh its relevance. Whether *Beechum*'s second prong has been satisfied depends on a variety of factors that include "the strength of the government's case on the issue of intent, the overall similarity of the extrinsic and the charged offenses, the amount of time separating the extrinsic and charged offenses, and whether it appeared at the commencement of trial that the defendant would contest the issue of intent." *U.S. v. Mitchell,* 666 F.2d 1385 (11th Cir. 1982) (citing *Beechum,* 582 F.2d at 914–15). The district court's evaluation of these factors will be reversed on appeal only if the defendant can demonstrate that the district court abused its wide discretion. 666 F.2d at 1390. Here the extrinsic and charged offenses were virtually identical and occurred in consecutive years. Dixon, by contending that the funds he received from Mrs. Standley constituted a loan, implicitly disputed the willfulness of the alleged tax evasion. Further, the district court reduced the possibility of prejudice by giving a limiting instruction. Finally, we note that other courts have consistently admitted evidence of tax evasion in pre- and post-indictment years on the issue of the willfulness of the evasion charged in the indictment. *See, e.g., Amos v. U.S.,* 496 F.2d 1269, 1273–74 (8th Cir.1974); *U.S. v. Cleveland,* 477 F.2d 310, 314 (7th Cir.1973); *U.S. v. Coblentz,* 453 F.2d 503, 505 (2d Cir.1972); *U.S. v. Ramantanin,* 452 F.2d 670, 672 (4th Cir. 1971); *U.S. v. Vacca,* 431 F.Supp. 807, 810–11 (E.D.Pa.1977), *aff'd,* 571 F.2d 573 (1978). *Cf. U.S. v. Skalicky,* 615 F.2d 1117, 1120 (5th Cir.1980) (consistent pattern of understating large amounts of income, coupled with evidence of falsehood, is relevant to issue of willfulness).

AFFIRMED.