**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gene C. BRAITHWAITE, and Michael L.**
**Stewart, Defendants-Appellants.**

**No. 81-5229.**

United States Court of Appeals,
Eleventh Circuit.

July 22, 1983.

Thompson & Lavandera, Henry W. Lavandera, Tampa, Fla., for Braithwaite.

Richard Lee Buckle (court-appointed), Bradenton, Fla., for Stewart.

William B. King, Stephen Crawford, Asst. U.S. Attys., Tampa, Fla., for U.S.

Before GODBOLD, Chief Judge, RONEY, Circuit Judge, and PITTMAN *, District Judge.

PITTMAN, District Judge:

The appellants, Michael L. Stewart and Gene C. Braithwaite (Braithwaite), were charged in a two-count indictment along with Patricia L. Stewart with one count of conspiracy to manufacture, distribute and dispense methaqualone, a Schedule II controlled substance, from June 24, 1980 until on or about October 15, 1980, in violation of 21 U.S.C. §§ 841(a)(1)[1], 846[2] (1976). The second count was against Michael L. Stewart for possession of methaqualone with intent to distribute, in violation of Section 841(a)(1).

A jury trial commenced on January 28, 1981. At that time co-defendant Patricia L. Stewart did not appear for trial and was severed from the case. Appellant Michael Stewart was found guilty of Counts One and Two of the indictment; appellant Braithwaite was found guilty of Count One. Appellant Michael Stewart argues on appeal that the district court erred in denying

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. § 841. Prohibited acts A
   (a) Unlawful acts
   Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

\* \* \* \* \* \*

2. § 846. Attempt and conspiracy
   Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

his motion to suppress evidence gathered as a result of the use of electronic "beeper" surveillance without a search warrant. Appellant Braithwaite, although he joined in motion to suppress in the district court, concedes that he lacks standing to assert any fourth amendment violation in connection with the "beeper" surveillance. He asserts on appeal that the district court erred by (1) admitting into evidence certain testimony proffered by Detective Jeffrey Paul Kronschnabl of the Clearwater, Florida Police Department; (2) denying appellant's motion for mistrial on the grounds that comments made in closing argument by the prosecution were outside the evidence in the case; and (3) denying appellant's motion for judgment of acquittal at the close of the government's case-in-chief on the grounds of insufficiency of evidence. We reject all the contentions and affirm the convictions.

The evidence at trial, construed in the light most favorable to the government, see *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), shows that in June, 1980, a company known as "Sun Coast Supplies" ordered certain chemicals from MCB Manufacturing Chemists and Sherwin-Williams, prepaid with postal money orders signed by "P. Murphy", the maiden name of Patricia Stewart. Both orders were reported to the Drug Enforcement Administration (DEA) as the precursors to a controlled substance, methaqualone. DEA chemists determined that the combination of chemicals ordered could, under proper conditions and with the addition of readily available acetic anhydride, make methaqualone. The chemists also determined that there was no non-contraband use for this particular combination of chemicals.

The Sherwin-Williams order was shipped to St. Petersburg, Florida, where it was received at the Bay Pines Storage mini-warehouse by Frank Sessions, the roommate of Patricia Stewart and appellant Braithwaite.

Prior to shipment of the MCB order, an agent of the DEA placed a "beeper" electronic surveillance device in one of the chemical drums to be delivered. A search warrant was not obtained prior to the installation of the "beeper" in the drum of chemicals. The entire MCB order was then shipped to Tampa, Florida, where the shipment was photographed and the "beeper" was activated. The order was then delivered to Bay Pines Storage where DEA agents observed Frank Sessions accept delivery.

Between September 9, 1980 and September 21, 1980, the Bay Pines Storage facility in which the chemicals were housed was kept under constant visual surveillance. From September 22, 1980 until September 26, 1980, periodic checks were made to insure the continued presence of the "beeper" device. During one of these checks, no "beeper" signal was received, indicating that the chemicals had been removed from the facility. Using an airplane equipped with a special radio receiver, law enforcement officials eventually relocated the "beeper" in unit G–11 of the "Extra Garage", later ascertained to be a laboratory facility east of Bradenton, Florida. The unit G–11 laboratory had been leased to an individual known as Jeff Jackson.

On October 4, 1980, and on October 7, 1980, agents of the DEA conducting surveillance of the "Extra Garage" observed appellant Michael Stewart arrive at the facility, unlock the door, and load various boxes into an automobile. Appellant Michael Stewart was followed to Bradenton, Florida, where he was seen taking the same objects into a residence.

On October 15, 1980, a search warrant was issued and executed on the unit G–11 laboratory of the "Extra Garage", where chemicals, laboratory equipment and methaqualone, in various stages and final form, were discovered. Appellant Michael Stewart's automobile insurance card was also discovered on the floor of the unit G–11 laboratory.

Testimony at trial revealed that appellant Braithwaite had taken certain items from the unit G–11 facility at the direction of Patricia Stewart. Braithwaite denied any

knowledge of the nature of the chemicals. The testimony also revealed that at the time of the conspiracy charged, Braithwaite lived with Frank Sessions and Patricia Stewart, had been unemployed with no means of support other than part-time jobs and drug transactions, and had recently been arrested in possession of a large quantity of methaqualone.

### Denial of Motion to Suppress

Appellant Michael Stewart contends that he had a legitimate expectation of privacy in the unit G–11 facility in which the chemical drum in question was housed, and that because that expectation was invaded by the warrantless use of a "beeper" device, the trial court should have suppressed evidence obtained as a result of the intrusion. Appellant Braithwaite concedes that he lacks standing to raise the fourth amendment issue.

■ The government contends that appellant Michael Stewart lacked standing to challenge the installation of the "beeper". Standing to claim the protection of the fourth amendment against the use of evidence seized during an illegal search requires a "legitimate expectation of privacy in the invaded place." *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978).

The government did not challenge Michael Stewart's standing to assert a violation of his fourth amendment rights at the district court level. The situation presented herein is readily distinguishable from that in *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), wherein the Supreme Court deemed that the government had waived the opportunity to raise the standing issue. In *Steagald,* the government represented in its brief in opposition to certiorari to the Supreme Court that the house searched was "petitioner's residence" and was "occupied by petitioner, ...." nor had the standing issue been raised in either the circuit or district courts. *Id.* at 208–09, 101 S.Ct. at 1645–1646. Unlike *Steagald,* here the government has never asserted that appellant Michael Stewart had any legitimate expectation of privacy

in the chemical drum or the laboratory. Further, rather than waiting until the submission of Supreme Court briefs, the government "has raised the standing issue at [the] first level of appeal." *United States v. Briones-Garza,* 651 F.2d 364, 366 n. 1 (5th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 229, 74 L.Ed.2d 181 (1982).

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas,* 439 U.S. at 131 n. 1, 99 S.Ct. at 424 n. 1. Our inquiry, then, is whether appellant Michael Stewart has established that he possessed a legitimate expectation of privacy in either the chemical drum in which the "beeper" was placed or the unit G–11 facility, a laboratory.

Appellants' motion to suppress was submitted on stipulated facts, which reveal that the drum of chemicals in question was ordered by Sun Coast Supplies and paid for by "P. Murphy", the maiden name of co-defendant Patricia Stewart. Following the installation of the "beeper" device, the chemicals were shipped to Tampa, Florida, then delivered to Bay Pines Storage in St. Petersburg, Florida, where they were received by Frank Sessions, and stored in a unit leased by co-defendant Patricia Stewart. On September 22, 1980, a periodic check of the warehouse revealed no signal, indicating that the chemicals had been removed. On October 4, 1980, the "beeper" signal was relocated at unit G–11, used as a laboratory facility known as "Extra Garage". On that same day, at about 7:10 p.m., appellant Michael Stewart arrived at "Extra Garage", unlocked the unit G–11 laboratory, and removed some boxes.

■ Appellant Michael Stewart testified at trial that in order to assist Patricia Stewart end her involvement in the illicit manufacturing of drugs, he visited the "Extra Garage" facility on three or four occasions to remove chemical glassware in an effort to sabotage the operation. He further testified:

I never took any of the chemicals in there. They were too bulky to get rid of, plus I didn't want to be carrying contraband around in my car and it made me very nervous anyway.

So, that is the extent of any of my involvement in this.

\* \* \* \* . \* \*

" 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.' " *Rakas,* 439 U.S. at 133–34, 99 S.Ct. at 424–426, *quoting Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969). In the present case, Michael Stewart's own testimony disclaims any property or possessory interest, legitimate or otherwise, in the chemical drum in question or in the storage facility. The fact that he entered the premises with the approval of the lessee Patricia Stewart is of no moment. *See Rakas,* 439 U.S. at 148, 99 S.Ct. at 433.

In sum, we find that the appellant had no legitimate expectation of privacy in the chemical drum or the "Extra Garage" premises, unit G–11, and thus the district court properly denied the motion to suppress. Because lack of standing disposes of appellant's fourth amendment claims, there is no need to pass on appellant's arguments based on *United States v. Bailey,* 628 F.2d 938 (6th Cir.1980) and *United States v. Knotts,* 662 F.2d 515 (8th Cir.1981), *rev'd,* —— U.S. ——, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), that any legitimate expectation of privacy might have been invaded by the use of a "beeper" surveillance enhancement device. *See Knotts,* at ——, 103 S.Ct. at 1086–1088.

*Evidence of Prior Arrests*

At the trial of this matter the government called Detective Jeffrey Paul Kronschnabl of the Clearwater, Florida Police Department, to testify concerning his acquaintance with appellant Braithwaite. Outside the presence of the jury, Kronschnabl proffered the following testimony:

Q. Mr. Kronschnabl, did you ever have occasion to arrest an individual named Gene Braithwaite?

A. Yes, sir, I did.

Q. Do you recall when that arrest took place?

A. Yes, sir, it was the 25th of April, 1980.

\* \* \* \* . \* \*

Q. What was Mr. Braithwaite arrested for on that date?

A. He was arrested for possession of methaqualone tablets, possession of marijuana and possession of cocaine.

Q. How many methaqualone tablets did he have in his possession?

A. Between 2500 and 2800.

\* \* \* \* \* \*

Before the jury, the witness testified as follows:

Q. How do you know Mr. Braithwaite?

A. I met him on the 25th of April during the execution of a search warrant upon the residence that he was living in at the time.

Q. And what happened at that time?

A. I arrested Mr. Braithwaite for possession of twenty-five to twenty-eight hundred methaqualone tablets, twelve pounds of marijuana and some cocaine paraphernalia.

Appellant Braithwaite maintains that the prejudicial effect of Detective Kronschnabl's testimony outweighed its probative value and that the trial court erred by failing to make an on-the-record finding that the probative value of the proffered evidence outweighed its prejudicial effects. Appellant Braithwaite further contends that the variance between the proffered testimony and the testimony before the jury required the district court to declare a mistrial.

■ Rule 404(b) of the Federal Rules of Evidence provides:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as

proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under this rule, the propriety of the admission of extrinsic offense evidence is determined by a two-tiered inquiry: first, the proffered evidence "must be relevant to an issue other than the defendant's character. Second, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must be otherwise admissible under Rule 403[3]." *United States v. Mitchell,* 666 F.2d 1385, 1389 (11th Cir.), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1340 (1982) (following *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979)).

Here, the proffered evidence addressed Braithwaite's intent. Braithwaite was charged in the indictment with conspiracy "to manufacture, distribute and dispense Methaqualone, . . . ." The extrinsic offense concerning drug transactions, possession of a large quantity of methaqualone tablets, etc., also concerned Braithwaite's intent to traffic in drugs. We conclude that the first tier of *Mitchell* is thus satisfied.

Concerning the second aspect of our inquiry, *Mitchell* directs as follows:

Whether *Beechum*'s second prong has been satisfied depends upon the circumstances of the extrinsic offense. Factors to be considered include the strength of the government's case on the issue of intent, the overall similarity of the extrinsic and charged offenses, the amount of time separating the extrinsic and charged offenses, and whether it appeared at the commencement of trial that the defendant would contest the issue of intent. . . . The trial judge has wide discretion in evaluating these factors, and will not be reversed on appeal unless the

defendant can demonstrate abuse of that discretion.

666 F.2d at 1390 (citations omitted).

The district court did not abuse its discretion in the present case. The Kronschnabl testimony shows that on a prior occasion Braithwaite had possessed a large quantity of methaqualone tablets on April 25, 1980. The indictment charges that Braithwaite was involved in a conspiracy to dispense and distribute that same drug beginning June 24, 1980. Thus, there is proximity of time and character of offense. *See Mitchell,* 666 F.2d at 1390.

Neither was the Kronschnabl testimony unduly dilatory or cumulative. Defense counsel's opening statement clearly indicated that Braithwaite's defense was that he was simply "at the wrong place at the wrong time and perhaps with the wrong people." Intent was a disputed issue. The Kronschnabl testimony was thus necessary to the government's case.

A cursory comparison of the testimony as proffered with the testimony as presented to the jury unmistakably demonstrates that the two were substantially identical. The difference was not of sufficient impact to constitute a reversible variance. The district court properly denied appellant's motion for mistrial.

Finally, appellant argues that the district court committed reversible error by not making an on-the-record determination that the probative value of the proffered evidence outweighed its undue prejudicial effect, citing *United States v. Preston,* 608 F.2d 626 (5th Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980). In *Preston,* the court held:

We hold today that a Trial Judge must make an on-the-record finding that the probative value of admitting a prior conviction outweighs its prejudicial effect before admitting a non-609(a)(2) prior conviction for impeachment purposes un-

---

**3.** Rule 403 of the Federal Rules of Evidence provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

der Rule 609(a)(1). An on-the-record finding that probative value outweighs prejudicial effect is not merely an idle gesture. Such a finding insures that the Judge has at least taken into account the relevant considerations. Of course, such a finding can still be challenged, but such challenge is analyzed under the abuse of discretion standard. See *United States v. Martinez*, 5 Cir., 1977, 555 F.2d 1273, 1276.

*Id.* at 639 (footnote omitted). This rule is by its terms limited to evidence of prior convictions admitted under Fed.R.Evid. 609(a), which states:

For the purpose of attacking the credibility of a witness, evidence that he has been *convicted* of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

(Emphasis added). The evidence proffered here was not of a conviction but of an arrest, and was admissible under Fed.R. Evid. 404(b). We conclude that our analysis is thus controlled by *Mitchell*. *Preston* has no application here. The admission of the Kronschnabl testimony is admissible under the *Mitchell* analysis.

*Prosecutor's Comments in Closing Argument*

Detective Kronschnabl testified that when he arrested appellant Braithwaite he seized Braithwaite's address and telephone book. A photocopy of this book was admitted into evidence as Government's Exhibit 1. On the cover page of the address book were written the words "Phone Tap", under which was written the number 1–204–449–9944.

Clayton Robert Brown, a security manager for Chesapeake and Potomac Telephone Company of Washington, D.C., was called by the government to testify. Mr. Brown stated that the telephone number 1–204–449–9944 was normally used to test circuits and normally accessed by telephone company technicians testing equipment. Brown testified that while he did not know of any other legitimate or illegal uses for the number, persons other than telephone company personnel do utilize the number.

Telephone subscriber information and toll records for the telephones of co-defendants Patricia L. Stewart and appellant Michael L. Stewart each reflected calls from their respective telephones to telephone number 1–204–449–9944.

In closing argument, the attorney of the prosecution stated:

This is Gene Braithwaite's telephone and address book and notes. Up here, you see the telephone number, area code 1–202 449–9944 and right above it in a circle, it says "phone tap". At that time, they were calling to make sure their phone was not being tapped.

Similarly, these are stapled together, and the first bunch are stapled together on top of the second bunch of papers. You can also see that number once again, 1–202–449–9944, which is the number as we all know to decide (sic) whether your phone is being tapped or not.

■■■ Appellant contends that this comment went impermissibly beyond the evidence at trial. *See, generally Berger v. United States*, 295 U.S. 78, 84, 55 S.Ct. 629, 631, 79 L.Ed. 1314 (1935); *United States v. Morris*, 568 F.2d 396, 401–02 (5th Cir.1978). Although it may be error to allow counsel to argue to the jury facts that are not in evidence, "an attorney is entitled to urge the conclusions which the attorney thinks the jury should draw from the evidence." *United States v. Allen*, 588 F.2d 1100, 1108 (5th Cir.), *cert. denied sub nom. Perkins v. United States*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979). In the present case there was evidence to support the inference urged by the prosecution. That Braithwaite may have used the telephone number in question to check for a "phone tap" is a

reasonable inference given the notation in his personal address book.

### Denial of Motion for Judgment of Acquittal

Appellant Braithwaite's final contention is that the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient to link him with the conspiracy charged herein.

In *United States v. Teal,* 582 F.2d 343 (5th Cir.1978), the court, faced with the same contention in another conspiracy case, reiterated the applicable standard of review:

> On a motion for judgment of acquittal, the test is whether, taking the view most favorable to the Government, a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.
>
> \* \* \* \* \* \*
>
> The same test ... should apply whether the evidence is direct or circumstantial. [We] must accept as established all reasonable inferences that tend to support the action of the jury, and any conflicts in the evidence must be resolved in favor of the jury verdict.

*Id.* at 345 (quoting *United States v. Warner,* 441 F.2d 821, 825, 831 (5th Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971)). *See also Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *United States v. Marx,* 635 F.2d 436, 438 (5th Cir.1981).

■ Braithwaite alleges that the evidence at trial at best established "mere association" with the indicted co-conspirators who, unbeknownst to him, were manufacturers of illicit drugs. During the time of the conspiracy, Braithwaite shared a home with co-defendant Patricia Stewart and Frank Sessions. On October 9, 1980, Braithwaite told Detective Kronschnabl that he had come across a man known only by the initial "M", a chemist, who had connections with a warehouse outside Pinellas County, Florida, that was used as a clandestine methaqualone laboratory. Braithwaite also told Detective Kronschnabl that he

knew an individual named "Frank" who had connections with a warehouse involved in large-scale narcotics trafficking. Braithwaite admitted to removing chemicals from the storage facility. Braithwaite's telephone and address book contained a telephone number labeled "Phone Tap", which had been used by Patricia Stewart and appellant Michael Stewart. Finally, Braithwaite's intent to traffic in drugs was properly shown by a recent arrest for an offense very similar to that with which he was charged in the instant indictment.

The evidence against Braithwaite was sufficient to support his conviction, and under the applicable standard of review, we conclude that the district court did not err in denying Braithwaite's motion for judgment of acquittal.

AFFIRMED.