**UNITED STATES of America, Appellee,**

v.

**Harold R. LOTT, Appellant.**

**No. 84–5023.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1984.

Decided Jan. 10, 1985.

Certiorari Denied March 25, 1985.
See 105 S.Ct. 1852.

718

Paul E. Tinkler, Charleston, S.C. (Wallace & Wallace, Charleston, S.C., on brief), for appellant.

Marvin J. Caughman, Asst. U.S. Atty., Columbia, S.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., on brief), for appellee.

Before RUSSELL and HALL, Circuit Judges, and DUPREE, Senior District Judge of the Eastern District of North Carolina, Sitting by Designation.

DUPREE, District Judge:

Appellant Harold R. Lott was indicted on August 3, 1983 on two counts of converting cotton crops subject to Farmers Home Administration (FHA) liens in violation of 18 U.S.C. § 658. Lott was found guilty following a three-day jury trial and his motions for acquittal and a new trial were denied. Alleging numerous grounds for reversal of his conviction, Lott appeals. We affirm.

Lott's problems began when he suffered substantial losses from his farming operations in Barnwell County, South Carolina, following a drought in 1977. Because he was unable to obtain adequate financing for his 1978 crop from private lenders, Lott began borrowing money from the FHA. All FHA loans were secured by liens on Lott's crops.

Lower South Carolina experienced another drought in 1978 and Lott lost even more money from farming and investments on the commodity futures market. As a result, he failed to make any payments on his 1978 loan from the FHA. Although Lott again received funds from the FHA in 1979, he was required to place the money in an account supervised by the agency and to deliver all proceeds from the sale of his crops to the FHA. Lott complied with these requirements for all crops except his cotton and cottonseed.

On February 18, 1980, Lott contacted a friend, Alfred W. Flynn, the owner of Flynn Cotton Company in Williston, South Carolina, and requested a $50,000 advance on 337 bales of cotton stored at Flynn's warehouse. Flynn agreed to the advance and pledged Lott's warehouse receipts to a bank as collateral for a loan the proceeds of which went to Lott. It is uncontroverted that Lott failed to report this advance to the FHA and did not thereafter remit any of the advance to the agency.

In early March of 1980, Bill Stanley, a district supervisor for the FHA, learned during a telephone conversation with Flynn that Lott had obtained the advance on his cotton crop. Stanley later wrote Flynn a letter instructing him to make "all checks for proceeds [from the sale of the cotton] jointly with the Farmers Home Administration." [1]

Flynn eventually sold Lott's cotton crop for $104,150.06. Despite Stanley's directions that all proceeds should be remitted to the FHA by check naming both Lott and the FHA as payees, Flynn used $51,-387.63 to pay off the principal and interest on the loan he had obtained for Lott's advance. Flynn paid the remaining $52,-762.43 by check dated May 9, 1980 to Lott and the FHA as co-payees. Thus, the $50,-000 advanced by Flynn to Lott was never paid to the FHA either by Flynn or Lott.

Lott also sold 110 tons of cottonseed in May of 1980 for which he received $12,-050.96. He deposited the proceeds from the sale in his farm account on May 9, 1980 but made no attempt to remit the funds to the FHA. This brought the total amount of funds diverted from the cotton and cottonseed sales to $62,050.96.

The Department of Agriculture eventually conducted a criminal investigation into Lott's activities and discovered that he had used the converted funds to pay unsecured creditors, to start another farming operation with his sons, and for personal living expenses. After conferring with counsel, Lott agreed to cooperate with investigators and explained that he had used the $50,000 advance from Flynn to pay unsecured creditors because "he expected to get hit with about twenty judgments from various ... creditors ... and he knew ... someone would come up short, and that he preferred that someone to be Farmers Home Administration rather than [the unsecured] creditors." He had used the $12,050.96 from the cottonseed sale because "he had sold everything which he owned and had been left with nothing and ... felt that he was

entitled to that $12,000." These admissions apparently proved very damaging, for the jury convicted Lott of intentionally converting proceeds from the sale of both the cotton and the cottonseed crops.

Lott initially argues that the trial judge should have acquitted him on Count 1 of the indictment which charged him with conversion of his 1979 cotton crop in violation of 18 U.S.C. § 658. This statute imposes criminal penalties on anyone who, with intent to defraud, "knowingly conceals, removes, disposes, or converts to his own use ... any property mortgaged or pledged to ... the Farmers' Home Administration...." Lott contends that when he received the $50,000 advance from Flynn it was not proceeds from the sale of his cotton crop but only a loan. He claims that the FHA acquiesced in the advance by not requesting that he forfeit the money before the cotton was sold. Because the $50,000 was actually a loan and the FHA implicitly agreed to let him keep the funds, Lott asserts that he could not have been found guilty of conversion and the district court should have acquitted him on Count 1.

A similar argument was rejected by the Eleventh Circuit in *United States v. Mitchell*, 666 F.2d 1385, 1388 (11th Cir.), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1340 (1982). In that case the court held that an advance received on crops subjected to an FHA lien constituted proceeds and fell within the provisions of 18 U.S.C. § 658. Although Lott attempted to distinguish this case on its facts, we think that *Mitchell* is persuasive and that the trial judge correctly concluded that the $50,000 advance was a conversion within the meaning of 18 U.S.C. § 658. Moreover, even if the FHA did lead Lott to believe that it knew of the advance and implicitly acquiesced in his retaining the funds, this in no way absolved him of the crime of conversion. *See United States v. Weissman*, 434 F.2d 175, 179 (8th Cir.), *cert. denied*, 401 U.S. 982, 91 S.Ct. 1190, 28 L.Ed.2d 334 (1971).

---

1. Flynn testified at trial that if Lott had told him that the cotton was subject to an FHA lien he would have contacted the agency before making the $50,000 advance.

■ Lott's second challenge to his conviction is based on the alleged failure of the evidence to establish intent. This argument, too, is without merit. As previously stated, Lott told an FHA agent prior to trial that he "expected to get hit with about twenty judgments from ... various creditors," and that he "knew someone would come up short, and that he preferred that someone to be Farmers Home Administration rather than [his unsecured] creditors." This evidence fully supported a finding by the jury that Lott intended to defraud the FHA by using the $50,000 advance from Flynn to pay unsecured creditors.

Lott sought to lessen the impact of this admission during trial by arguing that he had only done what state law required him to do by paying off his unsecured creditors before paying the FHA. To support his argument, he requested that the trial judge charge the jury in conformity with S.C. Code Ann. § 29–13–50 which provides that any supplier of provisions for agricultural purposes has a lien superior to all others on the provisions until they are consumed. Although the provisions supplied to Lott by the unsecured creditors had been consumed, Lott claimed that South Carolina recognized the doctrine of tracing which meant that the unsecured creditors' liens carried over from the provisions to the crops.

■ The district court properly rejected Lott's proposed charge. The doctrine of tracing was adopted in South Carolina in *Creech v. Long,* 72 S.C. 25, 51 S.E. 614 (1905), but in that case the defendant had given a fertilizer supplier an oral promise that his lien on the fertilizer would carry over to the crops grown with the fertilizer. The existence of the oral promise in the *Creech* case distinguishes it from Lott's situation and the trial judge's ruling that a charge based upon the statute would be extraneous and only serve to confuse the jury was correct.

Lott's third ground for appeal is that he was prejudiced at trial by prosecutorial misconduct which occurred before trial. During the early stages of the investiga-

tion of his case, he was represented by Attorney Walter Beddingfield who was also under investigation for mishandling FHA funds loaned to Lott. Beddingfield advised Lott to cooperate fully with the FHA's investigating officer and it was during one of the investigative interviews that Lott made the damaging statements concerning his desire to pay off unsecured creditors before the FHA and his decision to use the $12,000 from the cottonseed sale for his own purposes. Lott now claims that the FHA agent should have told him that Beddingfield was under investigation. He further argues that if Beddingfield had been completely objective, he would have advised Lott to refrain from discussing the case with the FHA agent.

■ Lott's argument misses the mark for several reasons. First, it was Beddingfield's duty, not the FHA's, to inform his client of any potential conflict of interest. Second, Beddingfield only represented Lott during the initial stage of the investigation; he did not represent him at trial. There was therefore no error at trial and any claim of misconduct should have been raised prior to trial. Third, it was Lott's decision to cooperate with the investigator and there is no reason to believe that if he had another attorney that lawyer would have advised him to remain silent. Lott's claim of prosecutorial misconduct does not entitle him to relief.

Lott also claims that the trial judge erred by not granting his motion for a new trial on newly discovered evidence. Lott was tried in November of 1983. On November 14, 1983, Judge Van Sickle extended his decision in *Coleman v. Block,* 562 F.Supp. 1353 (D.N.D.1983), to a nationwide injunction prohibiting the FHA from foreclosing property subject to its liens or repossessing the property unless the FHA first followed the due process requirements set forth in 7 U.S.C. § 1981a. Lott argues that he did not know of this decision prior to this trial and that had he known of it, he could have cross-examined prosecution witnesses on whether they had followed the statutory procedures. If the procedures had not

been followed, Lott argues, the credibility of the government's witnesses would have been substantially weakened.

To prevail on a motion for a new trial, the defendant must show that the newly discovered evidence is "of such a nature that a new trial would probably produce a new result." *United States v. Mesa,* 660 F.2d 1070, 1077 (5th Cir.1981). Lott is not arguing that the existence of the nationwide injunction in *Coleman v. Block* in any way affected the merits of his case, he is only arguing that he may have been able to impeach government witnesses more effectively had he known of Judge Van Sickle's decision in the case. It is pure speculation to suggest that such use of this evidence at a new trial would result in Lott's acquittal by a jury. Accordingly, the trial judge properly denied his motion for a new trial.

We have considered Lott's remaining arguments concerning the trial judge's questioning of witnesses and comments to defense counsel during the trial and while some of the questions and comments when viewed in isolation, as defendant would have us do, may be subject to criticism, when taken in context we do not regard them as prejudicial to the point that the outcome of the trial was affected. The evidence of defendant's guilt was very substantial, if not indeed overwhelming, and on this record his conviction seems to have been foreordained with or without the judge's questions and comments. *See United States v. Parodi,* 703 F.2d 768, 775–78 (4th Cir.1983).

The judgment appealed from is

AFFIRMED.