69 F.3d 538
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John F. GILBERT, Defendant-Appellant.
 No. 94-1421.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1995.
 
 Before: MERRITT, GUY, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant John F. Gilbert appeals his conviction and sentence for defrauding the Farmers Home Administration ("FmHA") of property pledged as partial security for FmHA loans received from 1979 through 1985, in violation of 18 U.S.C. Sec. 658. Based on the following analysis, we affirm.
 
 I.
 
 2
 Gilbert has been a dairy farmer for most of his adult life, and executed several security agreements in connection with FmHA loans obtained between 1979 and 1985. He pledged 250 head of dairy cattle to FmHA as partial collateral for these loans. The security agreements required him to maintain the herd of cattle at the level of collateral (250 head).
 
 
 3
 In the mid-to-late eighties, Gilbert began to experience serious financial difficulties. In 1987, he filed a Chapter 12 bankruptcy for family farmers. Between January 1988 and April 1992, Gilbert sold the 250 cattle pledged to the FmHA as collateral. He also sold cattle which he had leased from the Lake Odessa Livestock Auction. An FmHA county supervisor and a U.S.D.A. agent testified that Gilbert stated that he knew that he was prohibited from selling the collateral. Gilbert and FmHA estimated in the security agreement that the value of the pledged cattle was $92,300. The market value of the cattle, however, was $101,095.[1]
 
 
 4
 After being indicted, Gilbert stipulated that he: (1) was indebted to the FmHA based on unpaid loans, (2) had pledged 250 head of cattle to the FmHA as security for these loans, and (3) had sold all of the 250 head of cattle pledged to FmHA, some of which were sold in the names of his mother and son. The only issue in dispute was his intent to defraud. Gilbert was tried and found guilty. He was sentenced to a twenty-one month term of imprisonment, $101,095 in restitution to the U.S.D.A., and a two-year period of supervised release.
 
 II.
 
 5
 Gilbert argues that the evidence was insufficient to prove his intent to defraud, and, hence, the trial court should have granted his motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29. The relevant statute provides, in part:
 
 
 6
 Whoever, with intent to defraud, knowingly ... disposes of ... any property mortgaged or pledged to ... the Secretary of Agriculture, acting through the Farmers Home Administration ... shall be fined no more than $5,000 or imprisoned not more than five years, or both....
 
 
 7
 18 U.S.C. Sec. 658. We must view the evidence in the light most favorable to the government, and determine if any rational trier of fact could have found that the Gilbert intended to defraud the FmHA. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 8
 Any rational jury could have found that Gilbert acted with the intent to defraud based on the following abundance of evidence: (1) he was an experienced farmer, (2) he had been involved in extensive dealings with the FmHA and other lending institutions, (3) he had pledged 250 cattle as collateral on a security agreement which provided in all capital letters: "DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT ... CONSENT ... MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW," (4) he grossly understated to the FmHA the number of pledged cows he sold during 1990, (5) he began leasing dairy cows which replaced the pledged cows, (6) he sold cattle in the names of his mother and his minor son, (7) U.S.D.A. agent Ackerman testified that Gilbert explained that he used this sales tactic because "he didn't want Farmers Home Administration to detect the cattle sales," (8) he ultimately ended up selling all of the pledged cattle, and nearly all of the leased cattle, (9) the dairy cattle were sold cheaply as beef cattle allowing Gilbert to escape reporting requirements, (10) Ackerman testified that Gilbert stated in May 1992 that "he did not have permission to sell the cattle," and (11) FmHA county supervisor Waldron testified that Gilbert stated that "he was aware [that it was unacceptable to sell cattle that had been pledged as collateral]."
 
 
 9
 This evidence is more than sufficient to show that Gilbert had the intent to defraud the FmHA in violation of 18 U.S.C. Sec. 658. See, e.g., United States v. Lott, 751 F.2d 717, 719-20 (4th Cir.) (sufficient evidence of intent to defraud where defendant told FmHA agent that he "knew someone would come up short, and that he preferred that someone to be Farmers Home Administration rather than [his unsecured] creditors"), cert. denied, 470 U.S. 1087 (1985). "[C]ircumstantial evidence alone can sustain a guilty verdict and ... to do so, [the] evidence need not remove every reasonable hypothesis except that of guilt." United States v. Stone, 748 F.2d 361, 362 (6th Cir.1984).
 
 III.
 
 10
 Next, Gilbert alleges that the trial court erred by admitting testimony from Bruce Terry, vice president of Commercial Bank, and Adrian Scholten, general manager of Lake Odessa Livestock Leasing. Specifically, he contends that this testimony should have been disallowed as overly prejudicial under Fed.R.Evid. 403, or as evidence of bad acts under Fed.R.Evid. 404(b).
 
 
 11
 Gilbert did not object to this testimony at trial so the court may review this question only for plain error. Fed.R.Crim.P. 52(b); Fed.R.Evid. 103(d). The plain-error doctrine "authorizes the Courts of Appeals to correct only 'particularly egregious errors,' those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " United States v. Young, 470 U.S. 1, 15 (1985) (citation omitted).
 
 
 12
 Terry testified about the shrinking number of cattle observed in two visits to Gilbert's farm during the period in question. He said he visited the farm because of concern regarding Gilbert's possible default on a loan with Commercial Bank. He also noted that Gilbert ultimately defaulted on this loan.[2]
 
 
 13
 Scholten also testified about the number of cattle on the property during the relevant period. He stated that Gilbert had leased 92 cows from Lake Odessa in June and September 1991, and that, by December of that year, all but twelve had been sold off. Additionally, he testified that Gilbert apologized and "said he needed the money to live."
 
 
 14
 The testimony of Terry and Scholten would likely be upheld under any standard of review. "Sometimes ... the facts complained about as prejudicial are so much a part of the res gestae of a crime as to be impossible to avoid." United States v. Hajal, 555 F.2d 558, 568 (6th Cir.), cert. denied, 434 U.S. 849 (1977). The instant case falls squarely into this scenario. See also United States v. Roberts, 548 F.2d 665, 667 (6th Cir.1977) ("jury is entitled to know the 'setting' of a case"). Moreover, evidence of other acts may be introduced under Rule 404(b) when the government has "the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent," so long as the evidence is not more prejudicial than probative. United States v. Johnson, 27 F.3d 1186, 1192 (6th Cir.1994), cert. denied, 115 S.Ct. 910 (1995). Gilbert's specific intent to violate 18 U.S.C. Sec. 658 was the only issue at trial, and he has failed to show that the evidence in question was overly prejudicial. Id. at 1192-93.
 
 
 15
 Accordingly, the court properly admitted the testimony of both Terry and Scholten. It committed no plain error. United States v. Causey, 834 F.2d 1277 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988).
 
 IV.
 
 16
 Gilbert argues that the trial court erroneously calculated his offense level by (1) overestimating the value of the pledged cattle designated as collateral, and (2) failing to reduce his debt by the amount of the dairy assignments. We will affirm a district court's enhancement unless it is clearly erroneous. United States v. Milligan, 17 F.3d 177, 184-85 (6th Cir.), cert. denied, 115 S.Ct. 211 (1994).
 
 
 17
 The court set Gilbert's base offense level at 4, then raised it 8 levels because the FmHA loss was greater than $70,000 but less than $120,000. Specifically, the court found that the FmHA loss was $101,095--the market value of the pledged cattle. Gilbert contends that the FmHA loss was approximately $6,000. He arrived at this figure by assigning a value of $92,300 to the cattle, and then subtracting $86,000 based on dairy assignments allegedly paid to FmHA between 1990 and 1992. Additionally, Gilbert's calculations assume that all payments made to FmHA were applied only to the prinicpal, not the interest.
 
 
 18
 The follwoing is a summary of the relevant facts: Gilbert borrowed $500,000 to $600,000 from FmHA. His bankruptcy filing in 1987 reduced his FmHA debt to $160,000, the amount of FmHA's security interest in Gilbert's various property interests. During the pendency of the bankruptcy reorganization, the buyers of Gilbert's milk were required to pay the proceeds to the bankruptcy court for distribution to creditors, including FmHA. After expiration of the bankruptcy plan in December 1990, FmHA arranged to receive its monthly loan repayments by means of dairy assignments from milk buyers. Gilbert made $86,197.48 in payments between December 1988 and May 1992. These payments represented not only dairy assignments, but also sales of secured equipment. FmHA employee Aileen Waldron testified that the unpaid principal on Gilbert's FmHA loans was approximately $121,000.
 
 
 19
 Ms. Waldron further testified that the value of any remaining secured equipment was $5,500. Thus, if FmHA sold the remaining equipment and the full amount was applied only to the principal, Gilbert's remaining debt to FmHA would be approximately $115,000.
 
 
 20
 FmHA was unable to sell the pledged cattle to recover any of the debt because Gilbert had sold the cows at a fair market value of approximately $101,000.[3] Accordingly, the court calculated the FmHA loss at approximately $101,000.
 
 
 21
 First, Gilbert asserts that the court's loss calculations did not take into account the approximately $86,000 paid to the FmHA in the form of milk payments. Gilbert provided no support for this argument at sentencing, and fails to do so here. First, the $86,000 in payments reflected not only dairy assignments, but also sales of secured equipment. Second, contrary to Gilbert's argument that these payments occurred between 1990 and 1992, the payments date back to December 1988. Third, the government presented testimony from Ms. Waldron that Gilbert's principal debt was $121,000, at the time of trial. Finally, Gilbert's only argument regarding the $86,000 in payments is that it was "inherently unfair" for the FmHA to have applied a large portion of the payments to interest rather than principal.[4] We find that Gilbert has failed to show that the court's loss calculations omitted the $86,000 paid to FmHA in the form of dairy assignments and sales of secured equipment.
 
 
 22
 Next, Gilbert argues that the value of the cattle should have been $92,300, which was the value estimated in the security agreement between Gilbert and FmHA. Although the district court's valuation appears to be proper,[5] this court has no reason to address this alleged error. Gilbert's calculation of $92,300 is within the range ($70,000 to $120,000) for an eight-level increase under USSG Sec. 2B1.1.[6] In short, Gilbert has failed to show that the district court clearly erred in its valuation of FmHA's loss.
 
 V.
 
 23
 Finally, Gilbert challenges the court's two-point enhancement for obstruction of justice based on alleged perjury. Perjury occurs when "[a] witness testifying under oath or affirmation ... gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." United States v. Dunnigan, 113 S.Ct. 1111, 1116 (1993). "[T]he sentencing judge must identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious." United States v. Spears, --- F.3d ----, 1995 WL 108966, * 6 (6th Cir. March 16, 1995). An enhancement is required under USSG Sec. 3C1.1 when a trial court makes specific findings of fact that a defendant has committed perjury. Id. at 1118; United States v. Morgan, 986 F.2d 151, 153 (6th Cir.1993).
 
 
 24
 The court below made sufficient findings. For example, the district court found that Gilbert's main contention that he was unaware of a prohibition on selling cows covered in the security agreement was flatly contradicted by the evidence.[7] The court also found that Gilbert consistently denied converting the FmHA collateral to his own use while the evidence clearly established that he had converted the collateral for business and personal expenses. Additionally, the court found that "[Gilbert's] explanations for an intent to lease cattle and thus somehow provide collateral for a loan ... [is] utterly illogical and I think it was sort of a spur of the moment response in testimony for why he said he had a couple of hundred cattle when, in fact, there were only 20 or 30 on the farm."
 
 
 25
 The court determined that an enhancement was required because "[these] are gross distortions ... [and defendant] is not so simple as to provide some kind of explanation to the court as to why those sorts of distortions would be given under oath." This determination should be upheld because its finding "encompasse[d] all of the factual predicates for a finding of perjury." Dunnigan, 113 S.Ct. at 1117.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 This figure is based on the average price per head, $404.38, multiplied by the 250 cattle pledged. Average price per head was based on defendant's sale of 451 cattle for $182,375 between January 1988 and April 1992
 
 
 [2]
 According to Terry's testimony, FmHA agreed in 1985 to subordinate its lien position on 36 cows in order for Commercial Bank to make a loan to defendant
 
 
 [3]
 As noted supra, Gilbert sold the dairy cattle cheaply as beef cattle
 
 
 [4]
 The district court specifically asked: "[i]s there anything you know of, any fact that would refute [the government's] point of view?" Gilbert's counsel responded, "Not by way of accounting. I just think it's inherently unfair for [the government] to double the defendant's offense level because of the amount of interest they charged to an ill advised loan in the first place and then assign $86,000 in payments to nothing but interest. That just doesn't seem fair to me."
 
 
 [5]
 See USSG Sec. 2B1.1, comment. (n. 2) ("Ordinarily, when property is taken or destroyed the loss is the fair market value"); United States v. Buckner, 9 F.3d 452, 454 (6th Cir.1993) (actual loss is proper calculation of loss under USSG Sec. 2F1.1, Application Note 7); United States v. Chichy, 1 F.3d 1501, 1509 (6th Cir.) (applying Sec. 2F1.1 and stating that "only issue ... is whether the district court's loss calculation was a reasonable estimate of the actual loss"), cert. denied, 114 S.Ct. 620 (1993). For questions regarding whether court applied Sec. 2B1.1 or Sec. 2F1.1, see note 7 infra
 
 
 [6]
 The district court and the probation department calculated defendant's offense level under USSG Sec. 2B1.1. At the sentencing hearing, however, the probation officer and the district judge referenced Sec. 2F1.1. Neither party appeals this slightly confusing application. Moreover, the application is inconsequential because defendant's offense level would be 12 under either guideline
 
 
 [7]
 At the sentencing hearing, defense counsel effectively conceded Gilbert's perjury regarding the issue of whether defendant knew it was wrong to sell the cattle. Counsel states: "Sometime around 1990 or 1991, the FHA (sic ) discovers Mr. Gilbert is selling his cows, tells him not to do it. He continues to do it."