**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 95-5077

RODERICK BLACK, a/k/a Roger,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, District Judge.
(CR-94-15)

Argued: July 19, 1996

Decided: September 18, 1996

Before ERVIN, Circuit Judge, and BUTZNER and
PHILLIPS, Senior Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Ervin wrote the opinion, in
which Senior Judge Butzner and Senior Judge Phillips joined.

_____

**COUNSEL**

**ARGUED:** Wayne James Payne, POWELL & PAYNE, Shallotte,
North Carolina, for Appellant. William Arthur Webb, Assistant
United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:**
Janice McKenzie Cole, United States Attorney, Christine Blaise Ham-
ilton, Assistant United States Attorney, Raleigh, North Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

A jury convicted Roderick Winston Black of fourteen counts stemming from a crack cocaine conspiracy. He was sentenced to consecutive terms of life in prison and sixty months. On appeal, Black argues that the district court interrupted and interrogated the witnesses and the defendant so frequently and in such a manner to usurp the role of the prosecutor and to deny him a fair trial. Black also challenges the district court's admission of certain witness statements at trial. In addition, Black's attorney raises several issues in accordance with Anders v. California, 386 U.S. 738 (1967), stating that, in his view, they are not meritorious. We affirm.

Black was an alleged leader of a crack ring in Ahoskie, North Carolina from November 1991 through January 21, 1994. Codefendant Wayne Shelton Simmons testified that he and Black began the operation together, and that they eventually supervised sixteen other members. Black obtained powder cocaine from New York, cooked it into crack, and distributed it to dealers or sold it himself. Over the life of the conspiracy, the Government estimated, members conducted 34 trips to New York, handling approximately 35,252 grams of cocaine powder and 2 kilograms of crack cocaine. The jury convicted Black of conspiring to possess with intent to distribute and distributing cocaine and crack cocaine; engaging in a continuing criminal enterprise under 21 U.S.C. § 848; using and carrying a firearm during and in relation to a drug trafficking crime; possessing crack with intent to distribute and aiding and abetting; distributing crack and aiding and abetting; possessing cocaine with intent to distribute and aiding and abetting; and distributing cocaine.

Black argues that, at trial, the district court interrupted and questioned the witnesses, including the defendant, to such an extent that it usurped the role of the prosecutor and denied him a fair trial. Black

2

failed to object to any of the questions and comments by the court at the time that they were made or at the next available opportunity when the jury was not present, as required by Fed. R. Evid. 614(c). United States v. Gastiaburo, 16 F.3d 582, 589 (4th Cir.), cert. denied, 115 S. Ct. 102 (1994). In order to obtain review in the absence of objection at trial, an appellant must demonstrate that the trial court's comments fell within the "limited exception" of being "so prejudicial as to deny [him] an opportunity for a fair and impartial trial." Id. at 589-90 (quotations omitted).

The appellant does not single out specific questions or comments as inherently prejudicial. Rather, he primarily argues that the frequency of the court's interjections usurped the role of the prosecutor. Black likens the district court's conduct to that in United States v. De Sisto, 289 F.2d 833, 834 (2d Cir. 1961), cited in United States v. Parodi, 703 F.2d 768, 776 (4th Cir. 1983). In De Sisto, the district court posed 3,115 questions, while the prosecution asked 1,381. 289 F.2d at 834. The Second Circuit found that such excessive participation by the trial judge appeared to usurp the role of the prosecution and constituted reversible error. Id. The frequency of the court's questions in this case, however, does not begin to equal that in De Sisto, and certainly does not, in itself, amount to error "sufficiently biased or notorious" to warrant review in the absence of objection at trial. See Gastiaburo, 16 F.3d at 590 (quoting Miley v. Delta Marine Drilling Company, 473 F.2d 856, 857-58 (5th Cir.), cert. denied, 414 U.S. 871 (1973)).

Having carefully reviewed the record, we conclude that most of the district court's questions were directed at clarifying specific facts, such as the locations where events occurred, the weights and measures of cocaine, and the meaning of slang terms. Questions designed to clarify confusing or complex witness testimony are a legitimate exercise of judicial power. Glasser v. United States, 315 U.S. 60, 82 (1942); Parodi, 703 F.2d at 775 (explaining that the trial judge "`should not hesitate to ask questions for the purpose of developing the facts; and it is no ground of complaint that the facts so developed may hurt or help one side or the other.'") (quoting Simon v. United States, 123 F.2d 80, 83 (4th Cir.), cert. denied, 314 U.S. 694 (1941)). In two instances, however, the court arguably overstepped the boundaries of desirable judicial participation by engaging in extended

3

examination of the defendant. Joint Appendix at 535-36, 537-38. As we have cautioned in the past, "the trial judge must always remember that he occupies `a position of preeminence and special persuasiveness' in the eyes of the jury." Parodi, 703 F.2d at 775 (quoting Pollard v. Fennell, 400 F.2d 421, 424 (4th Cir. 1968)).

Nevertheless, while the district court's questioning may have fallen short of the ideal, Black was not entitled to a perfect trial--simply a fair one. Id. at 776. We must not only examine the challenged questions, but also the trial judge's demeanor and conduct "throughout the trial, to search the record for evidence of partiality or bias that might indicate a belief on the judge's part that the defendant [ ] [was] `guilty' or suggest that he had usurped the function of the prosecutor." Id. The court's questions were neither hostile, nor badgering, nor incredulous. And any prejudice was mitigated by the court's curative instruction to the jury that it must draw no inferences from its questions. Thus, we conclude that Black received a fair trial, particularly in the context of the overwhelming evidence of his guilt. See United States v. Lott, 751 F.2d 717, 721 (4th Cir.), cert. denied, 470 U.S. 1087 (1985) (finding that trial judge's remarks, while subject to criticism in isolation, were not prejudicial where defendant's "conviction seems to have been foreordained with or without the judge's questions and comments").

Second, Black argues that the court erred in admitting several hearsay statements under Federal Rule of Evidence 801(d)(2)(E) on the grounds that they were "made in furtherance of a conspiracy." He identifies the following statements as objectionable:

> Q:      How did you find out that [the crack] got sold?
>
> Simmons:   Some people told me that they had been there and bought some.
>
> * * * *
>
> Q:      How did you find out--that he was selling from your house?
>
> Simmons:   Some people told me they had been there and bought some.

4

* * * *

Q:      And when you and Preston talked about it, why
        were you talking to Preston about the drug busi-
        ness?

Harrell:   Main thing we would always talk about is the--
           is the money that Roger and Wayne Simmons'
           organization is making, and we would talk about
           they were selling a key to two keys in two weeks
           time going back and forth to New York.

Black argues that the prosecution established neither that the fore-going statements were made in furtherance of the conspiracy, nor that the first two statements were made by conspirators.

Black also objects to the admission of certain other statements, which he contends were speculative and beyond the witnesses' personal knowledge in violation of Federal Rule of Evidence 602. On one occasion, the prosecution asked a witness why the conspirators customarily cooked only enough powder for immediate use. Stevenson answered, "I reckon they never had time to cook it all at one time." (J.A. at 237). On another occasion, the prosecution asked the same witness why a rifle was kept inside the crack house. The witness responded, "maybe so nobody wouldn't rob them."

Black's evidentiary claims fail because, even if the testimony were inadmissible, its admission was harmless because it could not have substantially affected the judgment. See United States v. Sanders, 964 F.2d 295, 299-300 (4th Cir. 1992). Among the "`decisive factors'" in harmless error analysis is the closeness of the case. United States v. Nyman, 649 F.2d 208, 211-12 (4th Cir. 1980) (quoting Gaither v. United States, 413 F.2d 1061 (D.C. Cir. 1969)). The record demonstrates that this case was not at all close. Witness Harrell's hearsay statement concerning the overall nature and success of the conspiracy was one among many statements by multiple witnesses describing Black as a leader of a highly successful conspiracy involving numerous trips to New York and producing a substantial flow of cash and drugs. Witness Simmons's statements pertaining to whether Black himself sold cocaine were but part of extensive testimony that Black

5

distributed crack from various locations. Similarly, the statements regarding the reasoning underlying crack cooking methods and the possession of a rifle--statements that, at best, were marginally relevant--were drops in a bucket of evidence demonstrating that Black cooked powder cocaine into crack, possessed a firearm, and purchased cocaine with the intent to distribute it. Because the evidence against Black was overwhelming, we find that any error in admitting the statements was harmless.

Black's counsel on appeal raises several additional issues pursuant to Anders v. California, 386 U.S. 738 (1967), stating that, in his view, the arguments are meritless. First, Black contends that the assistance of his counsel at trial was ineffective. Second, Black contends that the evidence was insufficient as a matter of law to support his conviction. He further argues that the court unconstitutionally abridged his Fifth Amendment right to a fair trial by restricting his testimony to the facts relevant to the charges. Finally, Black contends that, by applying the cocaine base provision of U.S.S.G. § 2D1.1, the district court violated his Fifth Amendment due process rights, his Fourteenth Amendment equal protection rights, and his Eighth Amendment right to be free from cruel and unusual punishment. In accordance with Anders, we have carefully examined the record, and find no merit in those arguments. This court requires that counsel inform his client, in writing, of his right to petition the Supreme Court of the United States for further review. If the client requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on the client.

For the foregoing reasons, the judgments of the district court are

AFFIRMED.

6