[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 15, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16138
Non-Argument Calendar

_____

D. C. Docket No. 04-00273-CR-T-23MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS MEJIA-GIOVANI,
a.k.a. Jorge Cruz-Gutierrez,
a.k.a. Sergio Romano Gonzalez,
a.k.a. Carlos Giovany-Mejia,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 15, 2005)

Before ANDERSON, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Carlos Mejia-Giovani, a citizen of Honduras, appeals his sentence for illegal re-entry into the United States after removal, in violation of 8 U.S.C. sections 1326(a) and (b)(2). Mejia-Giovani contends that the district court erred under United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005), when it sentenced him under a mandatory guideline system. Based on the statements of the district court that Mejia-Giovani's best interests were served by applying the Sentencing Guidelines and that Mejia-Giovani was at risk of an upward departure from the Guidelines, we conclude that the statutory error was harmless. We affirm Mejia-Giovani's sentence.

## I. BACKGROUND

Mejia-Giovani pleaded guilty without the benefit of a plea agreement. At the plea hearing, Mejia-Giovani admitted that he had a felony conviction for the sale of cocaine and a felony conviction for being a previously deported alien found in the United States. He also admitted that he had been deported on three different dates: December 22, 1993, April 1, 1997, and August 20, 2003.

According to the Presentence Investigation Report, Mejia-Giovani was born in Honduras in 1975. He had a six-year-old daughter who lived with Mejia-Giovani's mother in Honduras and a two-year old daughter who lived in Sarasota, Florida. Mejia-Giovani told the probation officer that after his release, he would

return to Honduras to live with his family.

The PSI calculated Mejia-Giovani's total offense level at 21. The base offense level was eight under U.S.S.G. section 2L1.2(a), and sixteen levels were added because Mejia-Giovani was previously deported for a drug trafficking conviction for which the sentence exceeded thirteen months. Mejia-Giovani received a three-level reduction for acceptance of responsibility. He had six criminal history points, which resulted in a criminal history category of III. His imprisonment range under the Sentencing Guidelines was 46-57 months.

Mejia-Giovani objected to the PSI on the ground that, under Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), and Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), the Sentencing Guidelines were unconstitutional. He argued both that he should not be sentenced under the Guidelines and that he should not receive a sixteen-level enhancement based on facts that were not proved to a jury beyond a reasonable doubt. At the sentencing hearing, Mejia-Giovani reiterated his objection that the Sentencing Guidelines were unconstitutional, although he acknowledged that our then controlling precedent bound the court to follow the Guidelines.

The district court questioned the wisdom of Mejia-Giovani's objection, and Mejia-Giovani's counsel acknowledged that applying the Guidelines was likely in

3

the best interest of his client:

>THE COURT:   I agree that the Eleventh Circuit has spoken on it and suggested, shall we say, that – which is what I was going to do anyway – to continue to apply the sentencing guidelines which is to say that we would apply the applicable statute and applicable law until appropriate authority says not to.  As it remains to be seen, it is as a prediction, but at any rate it is due to be denied today.
>I'm not sure that the best interest of the defendant aren't represented by the guidelines staying in effect on this.

>[COUNSEL]: I agree, Your Honor.  I have discussed that with my client.

>THE COURT:  It has something to do with what the 2005 Congress or United States District Judge in 2005 would think of repeat instances of alien deportation.  One's patience can get short in a big hurry.  But anyway, I think that your – your objection may have some merit, and I'm due to deny it.

Later in the same hearing, the district court warned about the probable

negative result for Mejia-Giovani if the Guidelines were eventually discarded:

>But to the extent that this defendant undertakes to establish his own policy and enforce his own policy with respect to his right to work in the United States, he does it as his extreme risk.
>Frankly, I suspect that if the – just so he's clear that this is nothing but my guess, that if the sentencing guidelines as they now situated are discarded by the Supreme Court in the coming weeks, and Congress again addresses this issue, that the remedy is likely to be an order of magnitude or two more severe than it is now.
>And perhaps the act of unlawful immigration will become a more risky proposition than it is now.  Anyway, that is not relevant in the slightest to the computation of this sentence.

Finally, after Mejia-Giovani  asked the court to forgive him and explained

4

that he broke the law to help support his daughter who was living in Sarasota, the

court explained that Mejia-Giovani was at risk of an upward departure, which

would be a certainty if he again illegally re-entered the United States:

> I want to explain something to you just person to person. The statutory maximum for this offense is 20 years. Any judge that sentences you in the future for re-entering the United States will have before them the same history that I have before me now.
> And that judge will know that <u>repeatedly sentencing you in accordance with the sentencing guidelines has had no effect, and that you are dedicated to re-entering the United States without regard to the cost</u>.
> I don't mean to seem harsh. I don't mean to seem threatening. I just want to tell you the facts as they are. <u>You're subject to having a judge even with the guidelines in place determining that you are incorrigible, and upwardly departing substantially so as not to endanger officers in the task of arresting you and not to create a bad example for other aliens who would immigrate unlawfully into the United States</u>.
> <u>No judge enjoys upwardly departing or departing upward, but I think that you are – you're in – frankly at risk of it this morning. But if you do it again. I – if you come back to the United States unlawfully again, I think you'll find the system out of patience</u>.

The district court then sentenced Mejia-Giovani to 51 months' imprisonment and

three years' supervised release.

## II. DISCUSSION

This Court has explained that there are two kinds of sentencing errors based

on the decision of the Supreme Court in <u>Booker</u>: one is constitutional and the

other is statutory. As to the first error, "the Sixth Amendment right to trial by jury

is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." United States v. Rodriguez, 398 F.3d 1291, 1297 (11th Cir. 2005) (citations omitted). As to the second kind of error, "[a]s a result of Booker's remedial holding, Booker error exists when the district court misapplies the Guidelines by considering them as binding as opposed to advisory." United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

This appeal involves the latter kind of error. Mejia-Giovani does not contend that the district court committed a constitutional error. Mejia-Giovani argues that the district court committed statutory error under Booker when the court considered the Guidelines as mandatory.

Because Mejia-Giovani properly preserved his Booker objection, we review for harmless error. See United States v. Mathenia, __ F.3d __, No. 04-15250, slip op. at 5 (11th Cir. May 23, 2005). The government concedes that the district court committed statutory error when it sentenced Mejia-Giovani under a mandatory guideline system. See id. at 1330-31. The burden then is on the government to show that the statutory error was harmless. See id. at 6.

The standard for determining whether a statutory error is harmless is "less demanding" than the standard for constitutional errors under Booker. Id. To

6

prove that a constitutional error was harmless, the government must prove, "beyond a reasonable doubt, that the error did not contribute to the defendant's ultimate sentence." Id. To prove that a statutory error was harmless, the government must show that "viewing the proceedings in their entirety, . . . the error did not affect the sentence, or had but very slight effect. If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error." Id. at 5-6.

That is not to say that the standard for determining whether a statutory error was harmless is an easy standard for the government to meet. As we have explained, "[i]t is as difficult for the government to meet that standard as it is for a defendant to meet the third-prong prejudice standard for plain error review." Id. Although this standard is difficult to satisfy, the government can do so in this appeal.

Our examination of the record convinces us that Mejia-Giovani would not have benefitted from the application of the Guidelines as advisory. The district court explained that its patience was running thin regarding Mejia-Giovani's "dedicat[ion] to re-entering the United States without regard to the cost" or the law. The court also stated that it did not believe that Mejia-Giovani benefitted from the argument that the court should not apply the Guidelines, and the court

stated that Mejia-Giovani was at risk of an upward departure. The court repeatedly warned Mejia-Giovani of the consequences he could face if he again re-entered illegally. The district court then sentenced Mejia-Giovani in the middle of the guideline range. Based on this record, we can say with fair assurance that Mejia-Giovani would not have received a lesser sentence in the absence of the statutory error. The error, therefore, was harmless.

## III. CONCLUSION

The district court committed statutory error under Booker, but the error was harmless. The error "did not affect the [sentence], or had but very slight effect." Id. Mejia-Giovani's sentence is, therefore,

**AFFIRMED**.