[DO NOT PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

**No. 04-15705**
**Non-Argument Calendar**

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 28, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-60182-CR-KAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILSON JOSEPH,
a.k.a. Wilson Petit Frere-Joseph,

Defendant-Appellant.

_____

**Appeal from the United States District Court**
**for the Southern District of Florida**

_____

**(November 28, 2005)**

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Wilson Joseph appeals his conviction and sentence for conspiracy to possess cocaine with intent to distribute and attempt to possess cocaine with intent to distribute. See 21 U.S.C. §§ 841, 846. Joseph raises three arguments on appeal: (1) the district court abused its discretion by admitting into evidence transcripts of recorded statements; (2) the district court abused its discretion by limiting Joseph's cross-examination of a government witness; and (3) the district court sentenced Joseph in violation of United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005). Because the district court did not abuse its discretion either by admitting the transcripts or by limiting cross-examination, we affirm Joseph's convictions. Because any statutory Booker error committed by the district court was harmless, we affirm Joseph's sentence.

## I. BACKGROUND

On July 26, 2003, William Sampsel, a confidential informant working for the Drug Enforcement Administration, met with drug traffickers off the coast of the Bahamas to arrange the transport of cocaine and marijuana into the United States. Several men, possibly including Joseph, loaded Sampsel's boat with the drugs, and Sampsel was advised how to contact Joseph to drop off the drugs once they were inside the United States. Sampsel turned over the drugs to the DEA, but arranged the meeting with Joseph at the instruction of the DEA.

2

Several days later, Sampsel met with Joseph at a restaurant in Hollywood, Florida. The DEA taped their conversation, during which Sampsel and Joseph arranged to exchange the drugs at a warehouse the following day. The DEA also videotaped the meeting in the warehouse, and after Joseph began to load the cocaine in his vehicle, the DEA arrested him. Joseph and Michele Jean Francois, who was also present at the warehouse, were indicted on charges of conspiracy to possess cocaine with intent to distribute, attempt to possess cocaine with intent to distribute, and conspiracy to import cocaine into the United States.

At trial, the defendants moved to exclude from evidence transcripts of the conversation at the restaurant and the meeting in the warehouse. They argued that the transcripts were inaccurate and that they erroneously identified one speaker to be Joseph. The district court denied the motion, but agreed to provide the following jury instruction:

> Ladies and gentlemen, in conjunction with any transcripts that are admitted during the course of this trial, I'm going to read you an instruction that I'll ask you to follow with respect to any such transcripts.
> As you have heard, this particular transcript has been identified as a typewritten transcript of the oral conversation that can be heard on a tape which I presume is going to be later admitted into evidence.
> . . . .
> This transcript also purports to identify the speakers engaged in the conversation. When the transcript is actually offered into evidence, I will admit it for the limited and secondary purpose of aiding you in following the content of the conversation as you listen to

3

the tape recording when it is played, and also to aid you in identifying the speakers. However, you are specifically instructed that whether the transcript correctly or incorrectly reflects the content of the conversation or the identity of the speakers is entirely for you to determine based upon your own evaluation of the testimony . . . you will hear concerning the preparation of the transcript and from your own examination of the transcript once it's presented to you in relation to your hearing the tape recording itself as the primary evidence of its own contents. And, if you should determine that the transcript is in any respect incorrect or unreliable, you should disregard it to that extent.

Now, this is somewhat premature, because the tape hasn't been played yet and you don't have the transcripts to review yet, but, in anticipation of hearing them and seeing them and there is some reference being made to them, you should consider all of the testimony relating to the transcripts in conjunction with this instruction.

Joseph objected to the phrasing of the jury instruction, but the district court overruled the objection.

The defendants presented evidence relating to the methods of transcription and the bias of the transcribers. Other speakers on the recordings testified that it was Joseph's voice on the tape, and Joseph cross-examined these witnesses. Francois introduced into evidence an alternate transcript of the recording, but Joseph chose not to offer his own. The district court repeated the jury instruction on several occasions. Joseph testified that it was not his voice on the recordings.

Sampsel, the confidential informant, testified against the defendants. Joseph and Francois sought to introduce seventeen civil judgments that had been entered

4

against Sampsel during the 1990s on the ground that they were evidence of fraudulent activity. The district court conducted voir dire to determine whether the judgments were admissible under Federal Rule of Evidence 608(b) and ruled that the judgments were inadmissible. During the hearing, Sampsel testified that he entered bankruptcy in "the late nineties;" the defendants produced the bankruptcy judgment, and it was dated in 1993. The defendants sought to cross-examine Sampsel on this inconsistency in open trial. The district court ruled this line of questioning inadmissible.

The jury acquitted Francois of all charges but convicted Joseph on the first and second counts of the indictment. The PSI calculated an offense level of 38 and an applicable guidelines range of 235-293 months. Joseph raised no factual objection to the PSI but argued that the sentencing guidelines were unconstitutional under Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). The district court overruled the objection and said it considered the guidelines to be mandatory. The district court said it "believe[d] that a sentence at the upper end of the guideline range is necessary in this case in view of what [it] consider[ed] the defendant's having perjured himself during the trial" but, "because of the high guideline range, an [enhancement for] obstruction [of justice] wasn't necessary in order to punish the defendant for having engaged in that conduct during the trial."

5

## II.  STANDARD OF REVIEW

This Court reviews the admission into evidence of transcripts of tape recordings for abuse of discretion.  United States v. Wilson, 578 F.2d 67, 69-70 (5th Cir. 1978); see also United States v. Hogan, 986 F.2d 1364, 1376 (11th Cir. 1993).  We review limitations on the scope of cross-examination for abuse of discretion.  United States v. Matthews, 168 F.3d 1234, 1244 (11th Cir. 1999).  We review preserved statutory Booker error for harmless error.  United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).

## III.  DISCUSSION

Joseph raised three arguments on appeal.  First, he argues that the district court abused its discretion in admitting into evidence transcripts of tape recorded and videotaped meetings.  Second, Joseph argues that the district court abused its discretion in limiting his cross-examination of Sampsel, the confidential government informant.  Third, Joseph argues that the district court committed statutory Booker error.  We address each argument in turn.

### A.  The District Court Did Not Abuse Its Discretion By Admitting the Transcripts into Evidence.

Joseph argues that the district court abused its discretion by admitting into evidence transcripts of the conversation at the restaurant and the meeting in the

6

warehouse.  The procedure for challenging the accuracy of a transcript is well-established in this Circuit:

> Initially, the district court and the parties should make an effort to produce an "official" or "stipulated" transcript, one which satisfies all sides.  If such an "official" transcript cannot be produced, then each side should produce its own version of a transcript or its own version of the disputed portions.  In addition, each side may put on evidence supporting the accuracy of its version or challenging the accuracy of the other side's version.  Since the jury must always reconcile the discrepancies in the transcript(s) against the recording itself, the district court need not listen to the tape or decide whether a transcript is accurate before the transcript is given to the jury and the recording is played.

United States v. Hogan, 986 F.2d 1364, 1376 (11th Cir. 1993) (quoting United States v. Wilson, 578 F.2d 67, 69-70 (5th Cir. 1978)).  In the light of the precedents, Joseph's argument fails.

The district court made available to the defendants each of the remedial procedures described in Hogan and Wilson.  Francois proffered his own version of the transcript.  Joseph presented testimony that purported to undermine the accuracy of the transcript.  Both defendants cross-examined witnesses present during the taped meetings.  Joseph even testified on his own behalf and denied his presence during the meetings.  Moreover, the district court repeatedly instructed the jury, "[S]hould [you] determine that the transcript is in any respect incorrect or

7

unreliable, you should disregard it to that extent." The district court did not abuse its discretion by admitting the transcripts into evidence.

*B. The District Court Did Not Abuse Its Discretion By Limiting Cross-Examination of Sampsel.*

Joseph argues that the district court abused its discretion in limiting cross-examination of Sampsel. Joseph contends that he should have been permitted to question Sampsel about false statements Sampsel made regarding the date of his bankruptcy during voir dire, but this argument fails. Federal Rule of Evidence 608(b) provides, "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness'[s] character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence." Fed. R. Evid. 608(b). "They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness [] concerning the witness'[s] character for truthfulness or untruthfulness . . . ." Id. It is within the discretion of the district court to "permit questioning about a witness'[s] prior bad acts on cross-examination, if the acts bear on the witness'[s] character for truthfulness." United States v. Matthews, 168 F.3d 1234, 1244 (11th Cir. 1999). But, "[i]f the witness denies the conduct, such acts may not be proved by extrinsic evidence and the questioning party must take the witness'[s] answer, unless the evidence would

8

be otherwise admissible as bearing on a material issue of the case." Id. (citations omitted).

On appeal, Joseph contends that it was an abuse of discretion for the district court to bar Joseph from questioning Sampsel on his testimony during voir dire. We disagree. Although Joseph correctly asserts that cross-examination on matters "concerning the witness'[s] character for truthfulness or untruthfulness" is permissible, Fed. R. Evid. 608(b), this does not end our inquiry. Federal Rule of Evidence 403 permits the district court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. The district court observed that it was not clear Sampsel "intentionally made a false statement or whether he was mistaken." Joseph could not introduce extrinsic evidence, i.e., Sampsel's voir dire testimony or the bankruptcy judgment, to prove the inconsistency, and the district court concluded that questioning on that matter would be of low probative value. Moreover, the district court permitted Joseph to impeach Sampsel on other grounds, including a pending charge of driving under the influence in Nevada. Because the discretion of the district court is "especially broad when it comes to controlling cross-examination for impeachment purposes,"

United States v. Van Dorn, 925 F.2d 1331, 1335 (11th Cir. 1991), we cannot say limiting cross-examination on this issue was an abuse of discretion.

### C. *Any Statutory Booker Error Was Harmless.*

Joseph argues that the district court committed statutory Booker error by sentencing him under a mandatory guidelines scheme. The government concedes that the district court committed statutory Booker error but argues that the error was harmless. We agree with the government.

Statutory Booker error arises "when the district court misapplies the Guidelines by considering them as binding as opposed to advisory." United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005). When the defendant has preserved his objection to the constitutionality of the sentencing guidelines, we review for harmless error. United States v. Mejia-Giovani, 416 F.3d 1323, 1326-27 (11th Cir. 2005). The burden is on the government to show that the statutory error was harmless, and that burden is to prove "that viewing the proceedings in their entirety, . . . the error did not affect the sentence, or had but very slight effect. If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error." Id. (citing United States v. Mathenia, 409 F.3d 1289, 1291 (11th Cir. 2005)).

10

The government has established harmless error. At the sentencing hearing, the district court expressed its opinion that "[Joseph] obviously perjured himself during trial," and the district court described Joseph's testimony as "incredible." The district court explained, "I didn't seek an enhancement for obstruction [of justice] when I saw the guidelines range, which I would have otherwise done since your client obviously perjured himself during the trial." The court concluded "a sentence at the upper end of the guideline range is necessary in this case . . . and, because of the high guideline range, an [enhancement for] obstruction [of justice] wasn't necessary in order to punish the defendant for having engaged in [perjury] during the course of the trial." Although the government only requested a mid-range sentence of 247 months of imprisonment, the district court imposed a term of 276 months. Based on the statements made by the district court, see Mejia-Giovani, 416 F.3d at 1326, and the sentence at the upper end of the guidelines range, we conclude that any statutory Booker error was harmless.

## IV. CONCLUSION

We affirm Joseph's convictions and sentence.

**AFFIRMED**.

11

TJOFLAT, Circuit Judge, dissenting:

The district court sentenced Joseph under a sentencing model that differs materially from the model Booker creates. See United States v. Rodriguez, 406 F.3d 1261, 1281 (11th Cir. 2005) (Tjoflat, J., dissenting from denial of rehearing en banc) (explaining the difference between sentencing pre-Booker and post-Booker.) The difference in the two models is so fundamental, and so striking, that the district judge in this case could not possibly have imagined what it would have been like to sentence Joseph using the new, Booker model. Among other things, the judge would have had to weigh, take appropriately into account, and make findings regarding the four sentencing objectives set out in 18 U.S.C. § 3553(a)(2). What evidence the parties, especially the defendant, may have presented touching on these objectives we can hardly surmise, much less know. Finding harmless error under these circumstances is, in my view, purely arbitrary.

I would vacate Joseph's sentence and remand the case for resentencing.