[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 29, 2005
THOMAS K. KAHN
CLERK

_____

**No. 04-16745**
**Non-Argument Calendar**

_____

D. C. Docket No. 04-00199-CR-T-26TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMIE GENARDO GLOVER,

Defendant-Appellant.

_____

**Appeal from the United States District Court**
**for the Middle District of Florida**

_____

**(November 29, 2005)**

Before TJOFLAT, ANDERSON and PRYOR, Circuit Judges.

PER CURIAM:

Jamie Genardo Glover appeals his conviction and sentence for being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). Glover raises three arguments on appeal: (1) the district court erroneously found that Glover's statement to federal agents was admissible because he waived his <u>Miranda</u> rights, (2) the evidence was insufficient to support a guilty verdict, and (3) during sentencing the district court erroneously enhanced his sentence based on an extra-verdict finding that Glover's previous conviction constituted a "crime of violence" and applied the United States Sentencing Guidelines as mandatory. Because the district court did not err in admitting Glover's statement and the evidence was sufficient to support the guilty verdict, we affirm the conviction. Because the district court erred in sentencing Glover under a mandatory guidelines scheme and the error was not harmless, we vacate the sentence and remand for resentencing.

## I. BACKGROUND

On July 15, 2003, police officers executed a search warrant on Glover's residence and found a semi-automatic handgun hidden under Glover's mattress. Glover was not present at the time of the search, but his roommate and a guest, who were present, both denied ownership of the gun and offered to make a telephone call to Glover, monitored by the police, to verify that the gun was his. During the call, Glover made statements about the gun.

Glover was indicted on one count of being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1). After his arrest, Glover was advised of his rights and waived them in writing. While transporting Glover for arraignment, federal agents questioned him regarding the gun. In response to the questioning, Glover admitted that he purchased the firearm.

Before trial, Glover moved to suppress his statement to the federal agents. The district court held a hearing and denied the motion on the ground that Glover had waived his Miranda rights. Glover moved for reconsideration and to supplement the record with testimony from his mother, Carol Durr. The district court granted the motion, and Durr testified that Glover was "mentally disabled," had a "tenth grade education," and had an "IQ of 57 or 67." After hearing this testimony, the district court again denied the motion to suppress.

At trial, the prosecution presented evidence that Glover occupied the bedroom in which the firearm was found, two occupants of the residence at the time of the search stated the gun belonged to Glover, and Glover admitted purchasing the gun. The jury convicted Glover. Glover moved for a post-verdict judgment of acquittal based on insufficient evidence. The district court denied this motion.

At sentencing, Glover objected to the classification of his previous conviction for battery on a law enforcement officer under Florida law as a crime of

violence on the ground that it would violate his Sixth Amendment right to a jury trial. See U.S. Const. Amend. VI; cf. Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004); Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000). The district court invoked the "prior convictions" exception to the Apprendi line of cases, denied the motion, and applied the enhancement. Glover had a total offense level of 20, a criminal history category of VI, and a sentencing guideline range of 70 to 87 months. The district court commented that "notwithstanding Blakely and Apprendi, it's business as usual under the Federal Sentencing Guidelines," and sentenced Glover to 78 months of imprisonment.

## II. STANDARD OF REVIEW

This Court reviews the denial of a motion to suppress a confession under a mixed standard: findings of fact are reviewed for clear error and the application of law to the facts is reviewed de novo. United States v. Gil, 204 F.3d 1347, 1350 (11th Cir. 2000). We review de novo the denial of a motion for post-verdict judgment of acquittal based on insufficiency of the evidence. United States v. Braithwaite, 709 F.2d 1450, 1457 (11th Cir. 1983); see also United States v. Abbell, 271 F.3d 1286, 1291 n.2 (11th Cir. 2001). We view the evidence in the light most favorable to the prosecution and determine whether "a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt."

4

Braithwaite, 709 F.2d at 1457.  We review de novo questions of law arising under the United States Sentencing Guidelines.  United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005).

## III.  DISCUSSION

Glover raises three arguments on appeal.  First, he argues that the district court erroneously admitted his incriminating statements because he had not validly waived his right against self-incrimination.  Second, Glover argues that the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient to support a guilty verdict.  Third, Glover argues that the district court erroneously enhanced his sentence by classifying his previous conviction as a crime of violence and by viewing the Guidelines as mandatory.  We address each argument in turn.

### A.  Motion to Suppress

Glover argues that the district court erroneously admitted his statement to the federal agents in violation of his Fifth Amendment right against self-incrimination.  U.S. Const. Amend. V; see Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).  Under Miranda, a police officer must read certain warnings—including the right to remain silent—to a suspect before subjecting him to "custodial interrogation."  384 U.S. at 444-45, 86 S. Ct. at 1612.  Evidence obtained in violation of Miranda is inadmissible at trial.  Id.

5

The government stipulates that Glover was subject to "custodial interrogation" but contends that Glover waived his <u>Miranda</u> rights. The government had to prove by a preponderance of the evidence that the defendant waived his rights "voluntarily, knowingly, and intelligently." <u>Colorado v. Spring</u>, 479 U.S. 564, 572-73, 107 S. Ct. 851, 856-57 (1987); <u>Hart v. Attorney General</u>, 323 F.3d 884, 892-93 (11th Cir. 2003). To satisfy this burden, the government had to prove the defendant had capacity to understand the <u>Miranda</u> warnings. <u>See</u> <u>Tague v. Louisiana</u>, 444 U.S. 469, 100 S. Ct. 652 (1980) (per curiam); <u>Coleman v. Singletary</u>, 30 F.3d 1420, 1426-27 (11th Cir. 1994).

Glover concedes that he signed a written waiver but argues that his waiver was not voluntary, knowing, and intelligent because he lacked the mental capacity to comprehend the warnings. Glover relies on Durr's testimony as to his level of education and his Intelligence Quotient. Durr's testimony was not corroborated by an expert evaluation, and her recollection was vague: "his IQ level was like -- I'm not sure, I believe they said 57, 67."

Although Durr's testimony supported Glover's argument, the government presented evidence that contradicted Durr's vague and uncorroborated testimony. The government presented evidence that Glover interacted normally and intelligently with the arresting agents and Glover was familiar with the criminal justice system. Because the district court could credit the proof provided by the

6

government, the district court did not clearly err in finding that Glover's waiver was knowing, voluntary, and intelligent.

## B. *Motion for Judgment of Acquittal*

Glover argues that the district court erroneously denied his judgment for acquittal based on insufficiency of the evidence. To obtain a conviction for being a felon in possession of a firearm, the prosecution must prove beyond a reasonable doubt that "the defendant was (1) in knowing possession of a firearm, (2) a convicted felon, and (3) that the firearm affected interstate commerce." United States v. Hall, 77 F.3d 398, 402 n.4 (11th Cir. 1996). Glover concedes the second and third elements and argues that the prosecution failed to provide sufficient evidence to prove he knowingly possessed the firearm.

Glover's argument fails. Knowing possession can be demonstrated by proof of "either actual or constructive" possession. United States v. Sweeting, 933 F.2d 962, 965 (11th Cir. 1991). To establish constructive possession, the government must show "ownership, dominion, or control" over the firearm. United States v. Smith, 591 F.2d 1105, 1107 (5th Cir. 1979). Glover admitted to purchasing the gun, two witnesses testified that the gun belonged to him, and Glover occupied the bedroom in which the gun was located. Viewing this evidence in the light most favorable to the government, we conclude that a reasonable jury could find Glover

7

had constructive possession of the gun.  See id.  Because the government met its burden of proof of constructive possession, we affirm Glover's conviction.

*C.  Sentencing*

Glover argues that he was sentenced in violation of United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005), because the district court (1) classified his previous conviction as a "crime of violence" and (2) considered the Guidelines to be mandatory rather than advisory.  We have defined the former issue as one of "constitutional Booker error" and the latter issue as one of "statutory Booker error."  See United States v. Rodriguez, 398 F.3d 1291, 1297 (11th Cir.), reh'g en banc denied, 406 F.3d 1261, cert. denied, ___ U.S. ___, 125 S. Ct. 2935 (2005).  We address each argument in turn.

1.  Constitutional Booker Error

Constitutional Booker error arises when "a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury."  Id. (citations omitted).  Glover argues that the district court made a finding of fact that his offense of battery on a law enforcement officer constitutes a "crime of violence."  We disagree.

Glover's argument fails for two reasons.  First, Booker left undisturbed the "prior convictions" exception to the rule that a jury must find facts that enhance a sentence.  Booker, ___ U.S. at ___, 125 S. Ct. at 756; see also United States v.

8

Camacho-Ibarquen, 404 F.3d 1283, 1290 n.3 (11th Cir. 2005). Second, whether a previous conviction is a "crime of violence" is a question of law, not of fact, as it must be determined by interpreting Guidelines section 4B1.2. U.S.S.G. § 4B1.2; see also United States v. Farris, 77 F.3d 391, 398 (11th Cir. 1996).

Guidelines section 4B1.2 defines "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--(1) has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ." U.S.S.G. § 4B1.2(a). Under Florida law, "battery occurs when a person: (1) Actually and intentionally touches or strikes another person . . . or (2) Intentionally causes bodily harm to another person." Fla. Stat. §§ 784.03, 784.07. Because battery on a law enforcement officer is a crime of violence under Guidelines section 4B1.2, the district court did not err when it enhanced Glover's sentence.

### 2. Statutory Booker Error

Statutory Booker error arises "when the district court misapplies the Guidelines by considering them as binding as opposed to advisory." United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005). The district court stated during the sentencing hearing that "notwithstanding Blakely [v. Washington, 524 U.S. 296, 124 S. Ct. 2531 (2004)] and Apprendi [v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000)], it's business as usual under the Federal Sentencing

9

Guidelines[.]" Because the district court considered the Guidelines to be mandatory, it committed statutory <u>Booker</u> error.

Because Glover properly preserved his <u>Booker</u> objection, we review for harmless error. <u>See</u> <u>United States v. Mejia-Giovani</u>, 416 F.3d 1323, 1326-27 (11th Cir. 2005) (citing <u>United States v. Mathenia</u>, 409 F.3d 1289, 1291 (11th Cir. 2005)). The burden is on the government to show that the statutory error was harmless, and that burden is to prove "that 'viewing the proceedings in their entirety, . . . the error did not affect the sentence, or had but very slight effect. If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error.'" <u>Id.</u> (quoting <u>Mathenia</u>, 409 F.3d at 1291).

The argument of the government is twofold and erroneous on both counts. First, the government argues that "nothing in the record suggests that the district court would have sentenced Glover differently had it understood the guidelines to be advisory instead of mandatory," but that argument is not enough to satisfy the burden of the government. The government must prove that something in the record suggests that the district court would have imposed the same or a greater sentence. <u>See</u> <u>id.</u> Second, the government argues that a sentence in the middle of the guidelines range establishes that any error was harmless, but that argument fails

because the sentence alone tells us nothing about whether the district could would have imposed a lesser sentence under an advisory guidelines scheme.

Although we recognize that two of our sister circuits have ruled that a mid-range sentence alone establishes that a statutory error was harmless, see United States v. Perez-Ramirez, 415 F.3d 876, 878 (8th Cir. 2005); United States v. Paxton, 422 F.3d 1203, 1207-08 (10th Cir. 2005), we disagree. We have recognized that "[i]t is as difficult for the government to meet [the harmless error] standard as it is for a defendant to meet the . . . standard for plain error review," see Mejia-Giovani, 416 F.3d at 1327 (quoting Mathenia, 409 F.3d at 1291), and "the fact that the district court sentenced the defendant to the bottom of the applicable guidelines range" does not establish plain error, United States v. Fields, 408 F.3d 1356, 1361 (11th Cir. 2005). To announce a rule that a mid-range sentence establishes harmless error would run counter to these holdings. The government must do more than rely upon a mid-range sentence to satisfy its burden under the harmless error standard.

Our holding is also consistent with our precedents regarding statutory Booker errors that were harmless. See Mejia-Giovani, 416 F.3d at 1327; United States v. Gallegos-Aguero, 409 F.3d 1274, 1277 (11th Cir. 2005). In Mejia-Giovani, in addition to noting that the defendant was sentenced in the middle of the guideline range, we also based our decision on several statements by the district

11

court that the sentence might have been <u>harsher</u> had the guidelines been considered advisory. <u>See</u> 416 F.3d at 1326 ("No judge enjoys . . . <u>departing upward</u>, but I think that you are . . . frankly at risk of it this morning." (emphasis added)). In <u>Gallegos-Aguero</u>, we similarly determined that the district court considered sentencing the defendant to the "maximum allowable under the statute of conviction." 409 F.3d at 1277. Because a mid-range sentence alone is insufficient to prove harmless error, we conclude that the statutory <u>Booker</u> error was not harmless.

## IV. CONCLUSION

Because the district court did not erroneously find that Glover waived his <u>Miranda</u> rights and properly denied the motion for judgment of acquittal, we **AFFIRM** Glover's conviction for being a felon in possession of a firearm. Because the district court committed statutory <u>Booker</u> error by treating the Guidelines as mandatory, and the government failed to establish that the error was harmless, we **VACATE** the sentence and **REMAND** for resentencing.

TJOFLAT, Circuit Judge, specially concurring:

I concur in the court's judgment, but write separately to emphasize why the Government has not demonstrated that the <u>Booker</u> statutory error in this case is harmless. If we were fully to take into account the extent to which the pre-<u>Booker</u> sentencing model (under which Glover was sentenced) differs from the post-<u>Booker</u> model, we would have to engage in pure guesswork to hold that the Government has shown harmless error in this case. I described these two sentencing models, and the extent to which they differ, in dissenting from this court's refusal to rehear en banc <u>United States v. Rodriguez</u>. 406 F.3d 1261, 1281 (11th Cir. 2005) (Tjoflat, J., dissenting from the denial of rehearing en banc).

Here is what I said:

It is difficult to overstate the extent to which <u>Booker</u> affects the federal sentencing framework.
 The starting point under both the old model (pre-<u>Booker</u>) and new model (post-<u>Booker</u>) of federal sentencing is 18 U.S.C. § 3553(a), which states that
> [t]he court shall impose a sentence sufficient, but not greater than necessary, . . . (A) to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2). In other words, the underlying goals of the statute and the Guidelines are "retribution, general deterrence,

13

incapacitation, and rehabilitation." <u>United States v. Mogel</u>, 956 F.2d 1555, 1558 n.2 (11th Cir.1992). In selecting an appropriate sentence, the sentencing court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the kinds of sentences available"; all relevant guidelines and policy statements issued by the Sentencing Commission; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1), (3)-(7).

Under the old model, the district court was bound to sentence the defendant within the applicable guideline range unless it determined that

> an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . . should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court [could] consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

18 U.S.C. § 3553(b)(1). Stated differently, the only way the defendant was going to get a downward departure under the old model was by showing that his case was not within the "heartland of typical cases." <u>Koon v. United States</u>, 518 U.S. 81, 94, 116 S.Ct. 2035, 2044, 135 L.Ed.2d 392 (1996). This was a difficult task. To start with, "the Sentencing Commission *has* already considered, and the Sentencing Guidelines *have* already factored in, many if not all circumstances that are arguably relevant to criminal sentencing. . . . The Guidelines are, as Congress intended them to be, comprehensive  . . . ." Kate Stith & Jose A. Cabranes, <u>Fear of Judging: Sentencing Guidelines in the Federal Courts</u> 102 (1998). Thus, it was quite unlikely that the defendant would be able to identify a circumstance that the Commission had altogether failed to consider. And once the sentencing court determined that the Commission had taken a circumstance into account, the defendant could only argue that the circumstance was present in his case to some atypical degree. This is because the Commission's substantive judgment as to the significance of the circumstance in a heartland case was unassailable.

The comprehensiveness of the Guidelines and the

14

invulnerability of the policy judgments on which they rest essentially rendered any evidence a defendant might present regarding the need for "adequate deterrence" or the need for "just punishment" irrelevant under the old model. The reason is simply that although reasonable minds may differ as to the level of punishment needed to adequately deter or justly punish a particular offense, once the Commission announced its views on the subject, it was difficult to argue that any particular case was atypical or outside the heartland with respect to these issues. Rather, a party seeking a departure generally accepted his base offense level as a starting point and then attempted to show that the case was atypical because it was committed in an unusual manner or for some unanticipated and unaccounted-for reason warranted a downward departure.

Because the Guidelines are merely advisory under the new model, the defendant is no longer limited to arguing that his case is somehow atypical. Such arguments, of course, remain viable, but under the new model the defendant can also simply concede that his case is typical and challenge the wisdom of the Commission's judgment regarding the appropriate punishment in heartland cases. That is, the defendant may simply argue that the applicable guideline sentence is "greater than necessary" to achieve the purposes of the Sentencing Reform Act. 18 U.S.C. § 3553(a). "[T]he Guidelines . . . are the product of *policy decisions* by the Sentencing Commission . . . . If those policy decisions are no longer mandatory, the sentencing judge is free to disagree with them." Booker, 125 S.Ct. at 790 n.3 (Scalia, J., dissenting).

Subject to review for reasonableness, district judges are now free to apply their "own perceptions of just punishment, deterrence, and protection of the public even when these differ from the perceptions of the Commission members who drew up the Guidelines." Id. at 790. Although "judges must still *consider* the sentencing range contained in the Guidelines, . . . that range is now nothing more than a suggestion that may or may not be persuasive . . . when weighed against the numerous other considerations listed in [§ 3553(a) ]." Id. at 787 (Stevens, J., dissenting). Indeed, as one district judge has already observed,

> the remedial majority in Booker [ ] direct[s] courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore. For example, under § 3553(a)(1) a sentencing court must consider the "history

15

and characteristics of the defendant." But under the guidelines, courts are generally forbidden to consider the defendant's age, his education and vocational skills, his mental and emotional condition, his physical condition including drug or alcohol dependence, his employment record, his family ties and responsibilities, his socio-economic status, his civic and military contributions, and his lack of guidance as a youth. The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant.

United States v. Ranum, 353 F.Supp.2d 984, 986 (E.D.Wis.2005) (citations omitted). Thus, mitigating circumstances and substantive policy arguments that were formerly irrelevant in all but the most unusual cases are now potentially relevant in every case.

United States v. Rodriguez, 406 F.3d 1286 - 89 (footnotes omitted).

As I understand the Government's position, a sentence in the middle of the Guidelines sentence range is presumptively harmless. How the Government can say this—when the district court had absolutely no idea that the model it should have been using rendered the Guidelines advisory and, moreover, gave it, instead of the Sentencing Commission, the ultimate responsibility for assessing the "need" for Glover's sentences to achieve the sentencing purposes set out in 18 U.S.C. § 3553(a)(2)(A),(B),(C), or (D)—escapes me. Was the district court clairvoyant? Of course not. This is why the court expressed no view as to the need for Glover's sentences to provide just punishment, or to deter the public from committing the same offenses, or to incapacitate Glover to keep him from committing further criminal acts. What the court would have done had it understood that the

16

Guidelines were merely advisory and that it was "free to disregard them," as Justice Scalia expressed it, could not be known without putting the court under oath and having it guess at what the sentencing hearing may have looked like had the parties used the post-Booker model. Such speculation would necessarily involve an imagined debate, possibly with or possibly without the introduction of empirical evidence, regarding the wisdom of accepting Sentencing Commission judgment calls made years ago as to the "need" of the sentences in Glover's case to achieve the objectives set out in § 3553(a)(2).

Where I come down is this. Except in the rarest of cases—say a case in which a statutory mandatory minimum sentence controls or highly influences the court's decision or the court indicates that it fully understands, pre-Booker, the post-Booker model—we can do nothing but guess whether the Booker statutory error is harmless.